## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NATHANIEL J. BROUGHTY,

               Plaintiff,

v.

CHRISTOPHER E. BOUZY,

               Defendant.

Case No. 2:22-cv-6458-SDW-AME

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

BALLARD SPAHR LLP

William P. Reiley (128872014)
700 East Gate Drive, Suite 330
Mount Laurel, NJ 08054-00015
Tel:  (856) 761-3465
Fax: (856) 761-1020
reileyw@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel:  (202) 661-2200
Fax:  (202) 661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Defendant Christopher E. Bouzy*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ..................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................3

I.      Bot Sentinel's YouTube Report ......................................................3

II.     Bouzy Begins Researching And Writing About Plaintiff ..........................4

III.    This Lawsuit ..............................................................................7

ARGUMENT ....................................................................................8

I.      THE FIRST AMENDMENT AND NEW YORK LAW IMPOSE
        A SERIES OF THRESHOLD HURDLES FOR PLAINTIFF........................9

        A.      The Challenged Speech Must State Facts, Not Express
                Opinions ..........................................................................11

        B.      Plaintiff Must Demonstrate That The Challenged Speech
                Is False............................................................................14

        C.      Plaintiff Must Plausibly Allege That Defendant Published
                The Challenged Speech With Constitutional "Actual
                Malice" Fault.....................................................................15

                1.      Plaintiff is a Public Figure Required to Show Actual
                        Malice....................................................................16

                2.      Plaintiff Must Also Show Actual Malice Under New
                        York Law ................................................................19

II.     PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION .............21

        A.      Plaintiff Fails To State A Claim As To Tweets About His
                Credentials and Background .................................................22

        B.      Plaintiff Fails To State A Claim As To The BS Statement.................28

C.    Plaintiff Fails To State A Claim Over Criticism Of His "Grifting" ..................................................................................31

D.    Plaintiff Fails To State A Claim As To The "Other" Statements ......................................................................................35

III.    PLAINTIFF'S OTHER TORT CLAIMS ALSO FAIL AS A MATTER OF LAW..................................................................................38

IV.    THE DISMISSAL SHOULD BE WITH PREJUDICE ...............................39

CONCLUSION .....................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp.*,
   783 F.3d 1328 (D.C. Cir. 2015)..................................................................2, 23

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013) ...............................................24

*Aristocrat Plastic Surgery v. Silva*,
   169 N.Y.S.2d 272 (App. Div. 2022)..................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................8, 15, 16, 25

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) ................................................15, 16, 25

*Biro v. Condé Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012) ...............................12, 13, 24, 33

*Biro v. Condé Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) ...............................................25

*Bose Corp. v. Consumers Union*,
   466 U.S. 485 (1984)................................................................24, 25

*Braden v. News World Commc'ns*,
   No. CA-10689'89, 1991 WL 161497
   (D.C. Super. Ct. Mar. 1, 1991) .........................................................18

*Brahms v. Carver*,
   33 F. Supp. 3d 192 (E.D.N.Y. 2014) .................................................14

*Brimelow v. New York Times Co.*,
   No. 20 Civ. 222 (KPF), 2020 U.S. Dist. LEXIS 237463
   (S.D.N.Y. Dec. 17, 2020) .....................................................11, 31, 34

*In re Burlington Coat Factory Secs. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ...........................................................3

*BYD Co. v. VICE Media*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021) ........................................................11, 27

*CACI Premier Tech., Inc. v. Rhodes*,
  536 F.3d 280 (4th Cir. 2008) ..............................................................13

*Camassar v. Day Publ'g*,
  No. KNLCV136019301S, 2015 Conn. Super. LEXIS 2581
  (Oct. 9, 2015) .........................................................................36

*Celle v. Filipino Rep. Enters.*,
  209 F.3d 163 (2d Cir. 2000) ...........................................................18, 25

*Chapin v. Knight-Ridder*,
  993 F.2d 1087 (4th Cir. 1993) .........................................................23, 26

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014) ........................................................13, 35, 36

*Cibenko v. Worth Publishers*,
  510 F. Supp. 761 (D.N.J. 1981) ...........................................................10

*Coleman v. Grand*,
  523 F. Supp. 3d 244 (E.D.N.Y. 2021) .....................................................19

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
  551 F. Supp. 3d 320 (S.D.N.Y. 2021) ..................................................19, 20

*Dillon v. City of New York*,
  704 N.Y.S.2d 1 (App. Div. 1999).........................................................33

*Edwards v. Nat'l Audubon Soc'y*,
  556 F.2d 113 (2d Cir. 1977) ............................................................31

*Ellis v. Time, Inc.*,
  No. Civ.A. 94-1755 (NHJ), 1997 WL 863267
  (D.D.C. Nov. 18, 1997) .................................................................18

*Fairfax Fin. Holdings v. S.A.C. Cap. Mgmt.*,
  160 A.3d 44 (N.J. Super. Ct. App. Div. 2017) ...........................................10

*Faltas v. The State Newspaper*,
  928 F. Supp. 637 (D.S.C. 1996) .........................................................37

*Farber v. Jefferys*,
  959 N.Y.S.2d 486 (App. Div. 2013)............................................................17, 18

*Farrakhan v. NYP Holdings*,
  638 N.Y.S.2d 1002 (Sup. Ct. 1995)...................................................................27

*Food Lion v. Capital Cities/ABC*,
  194 F.3d 505 (4th Cir. 1999) ..............................................................................38

*Ganske v. Mensch*,
  480 F. Supp. 3d 542 (S.D.N.Y. 2020) ................................................3, 11, 12, 33

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)..............................................................................................15

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)................................................................................16, 17, 21

*Goldman v. Barrett*,
  No. 15 Civ. 9223 (PGG), 2016 U.S. Dist. LEXIS 145786
  (S.D.N.Y. Aug. 24, 2016) ...................................................................................33

*Goldman v. Reddington*,
  No. 18-cv-3662 (RPK) (ARL), 2021 U.S. Dist. LEXIS 171340
  (E.D.N.Y. Sept. 9, 2021).....................................................................................20

*Gross v. New York Times Co.*,
  623 N.E.2d 1163 (N.Y. 1993)......................................................................13, 29

*Harris v. Am. Acct. Ass'n*,
  No. 5:20-CV-01057, 2021 U.S. Dist. LEXIS 226517
  (N.D.N.Y. Nov. 24, 2021) ...................................................................................19

*Harte-Hanks Commc'ns v. Connaughton*,
  491 U.S. 657 (1989)................................................................................30, 31, 34

*Harvey v. CNN*,
  520 F. Supp. 3d 693 (D. Md. 2021).....................................................................35

*Henry v. Fox News Network*,
  21-CV-7299 (RA), 2022 U.S. Dist. LEXIS 169928
  (S.D.N.Y. Sept. 20, 2022)....................................................................................38

*Houlahan v. World Wide Ass'n of Specialty Programs & Schs.*,
   No. 04-01161(HHK), 2006 U.S. Dist. LEXIS 71858
   (D.D.C. Sept. 29, 2006) ...................................................................18

*Huizenga v. NYP Holdings*,
   No. 17-CV-2113-LTS, 2019 U.S. Dist. LEXIS 65059
   (S.D.N.Y. Apr. 16, 2019)...................................................................38

*Hustler Magazine v. Falwell*,
   485 U.S. 46 (1988).............................................................................38

*Immuno AG. v. Moor-Jankowski*,
   549 N.E.2d 129 (N.Y. 1989)..............................................................28

*Immuno AG. v. Moor-Jankowski*,
   567 N.E.2d 1270 (N.Y. 1991)............................................................14

*Jacobson v. CBS*,
   19 N.E.3d 1165 (Ill. Ct. App. 2014) .................................................18

*Jacobus v. Trump*,
   51 N.Y.S.3d 330 (Sup. Ct. 2017).......................................................12

*Kahl v. Bureau of Nat'l Affs.*,
   856 F.3d 106 (D.C. Cir. 2017) ............................................................9

*Kendall v. Daily News Publ'g*,
   716 F.3d 82 (3d Cir. 2013) ................................................................34

*Kerrigan v. Otsuka Am. Pharm.*,
   560 F. App'x 162 (3d Cir. 2014) ..............................................11, 12

*Krepps v. Reiner*,
   588 F. Supp. 2d 471 (S.D.N.Y. 2008) ........................................38, 39

*Lauderback v. ABC*,
   741 F.2d 193 (8th Cir. 1984) ............................................................13

*Lee v. TMZ Prods.*,
   710 F. App'x 551 (3d Cir. 2017) ......................................................21

*Levin v. McPhee*,
   119 F.3d 189 (2d Cir. 1997) .....................................................*passim*

vi

*Libre By Nexus v. BuzzFeed*,
    311 F. Supp. 3d 149 (D.D.C. 2018).....................................................23

*Masson v. New Yorker Magazine*,
    501 U.S. 496 (1991)...................................................................15, 30

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .......................................................16, 25

*McCafferty v. Newsweek Media Grp.*,
    955 F.3d 352 (3d Cir. 2020) .........................................................*passim*

*McDougal v. Fox News Network*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) ...............................................16

*Michel v. NYP Holdings*,
    816 F.3d 686 (11th Cir. 2016) .....................................................16, 26

*MiMedx Grp. v. Sparrow Fund Mgmt.*,
    No. 17 Civ. 7568 (PGG), 2018 U.S. Dist. LEXIS 169669
    (S.D.N.Y. Sept. 29, 2018)..............................................................31

*Nat'l Ass'n of Letter Carriers v. Austin*,
    418 U.S. 264 (1974)......................................................................15

*Nelson Auto Ctr. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020) ..........................................................16

*Pace v. Baker-White*,
    850 F. App'x 827 (3d Cir. 2021) .......................................................9

*Palin v. New York Times Co.*,
    510 F. Supp. 3d 21 (S.D.N.Y. 2020) ...............................................19

*Palin v. New York Times Co.*,
    No. 17-cv-4853 (JSR), 2020 U.S. Dist. LEXIS 11544
    (S.D.N.Y. Jan. 19, 2020).................................................................39

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ..........................................................23

*Phila. Newspapers v. Hepps*,
    475 U.S. 767 (1986).......................................................................14

*Pippen v. NBCUniversal Media*,
    734 F.3d 610 (7th Cir. 2013) ...............................................................16

*Prager v. ABC*,
    569 F. Supp. 1229 (D.N.J. 1983) ........................................................10

*Prince v. Intercept*,
    21-CV-10075 (LAP), 2022 U.S. Dist. LEXIS 183551
    (S.D.N.Y. Oct. 6, 2022) .......................................................................31

*Qureshi v. St. Barnabas Hosp. Ctr.*,
    430 F. Supp. 2d 279 (S.D.N.Y. 2006) .........................................32, 33

*Ram v. Moritt*,
    612 N.Y.S.2d 671 (App. Div. 1994).............................................36, 37

*Rappaport v. VV Publ'g*,
    618 N.Y.S.2d 746 (Sup. Ct. 1994)......................................................28

*Rinaldi v. Viking Penguin*,
    420 N.E.2d 377 (N.Y. 1981)................................................................34

*Ryniewicz v. Clarivate Analytics*,
    803 F. App'x 858 (6th Cir. 2020) .......................................................16

*San Antonio Express News v. Dracos*,
    922 S.W.2d 242 (Tex. Ct. App. 1996).................................................18

*Sandals Resorts Int'l v. Google*,
    86 A.D.3d 32 (1st Dep't 2011) ............................................................12

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012).........................................................16, 21

*SEG Sports Corp. v. State Athletic Comm'n*,
    952 F. Supp. 202 (S.D.N.Y. 1997) .....................................................39

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000) ...............................................................39

*Small Bus. Bodyguard v. House of Moxie*,
    230 F. Supp. 3d 290 (S.D.N.Y. 2017) .........................................13, 14

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)................................................................27

*Steinhilber v. Alphonse*,
  501 N.E.2d 550 (N.Y. 1986)..................................................13

*Suozzi v. Parente*,
  616 N.Y.S.2d 355 (App. Div. 1994)......................................30

*Tah v. Global Witness Publ'g*,
  991 F.3d 231 (D.C. Cir. 2021)...............................................16

*Tannerite Sports v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017) ...........................................*passim*

*Time, Inc. v. Pape*,
  401 U.S. 279 (1971)................................................................30

*Turner v. Wells*,
  879 F.3d 1254 (11th Cir. 2018) .......................................16, 18

*Ventura v. Kyle*,
  825 F.3d 876 (8th Cir. 2016) .................................................39

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) .........................................16, 34

*Warriner v. Stanton*,
  475 F.3d 497 (3d Cir. 2007) .................................................10

*Wooley v. Maynard*,
  430 U.S. 70 (1977)................................................................39

*Wright v. Dennis*,
  No. 0604318/2006, 2008 WL 475914
  (N.Y. Sup. Ct. Feb. 11, 2008)........................................14, 15

*Yeager v. NPR*,
  773 F. App'x 1030 (10th Cir. 2019) ....................................16

**Statutes**

N.Y. Civ. Rights Law § 70-a .....................................................19

N.Y. Civ. Rights Law § 76-a ...............................................................19, 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................8, 21, 26

Restatement (Second) of Conflict of Laws § 150....................................................10

2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017)...............................9

**PRELIMINARY STATEMENT**

Defendant Christopher E. Bouzy, founder of the anti-disinformation platform Bot Sentinel, has made it his mission to help members of the public "engage in healthy online discourse without inauthentic accounts, toxic trolls, foreign countries, and organized groups manipulating the conversation."[1]  After his company, in conjunction with *Rolling Stone*, reported on YouTube video creators who repeatedly violated that site's policies, Bouzy found himself in the sights of Plaintiff Nathaniel Broughty, a legal commentator and social media personality who publishes videos under the names "Nate Broady" and "NateTheLawyer."[2]

When Bouzy responded by posting tweets questioning Plaintiff's background and his fundraising efforts, Plaintiff filed a classic SLAPP designed to chill Bouzy's speech.  Specifically, Plaintiff asserts defamation and related tort claims over close to two dozen tweets that (1) questioned Plaintiff's credentials, because there is in fact no licensed New York attorney named "Nate Broady"; (2) described a video by Plaintiff stating that, as a prosecutor, he "knew all the tricks" that law enforcement uses because as a police officer he "was doing all that shit, too"; and (3) labelled Plaintiff a "grifter," as Plaintiff had described himself.

---

[1] *See* https://botsentinel.com/info/about (cited in Compl. ¶ 44).

[2] To avoid any confusion between the names Bouzy, Broady, and Broughty, we refer to Mr. Broughty as "Plaintiff" throughout this brief.

Plaintiff's claims are entirely without merit as a matter of law.  First, the tweets about there being no attorney named "Nate Broady" are literally true.  To the extent they implicitly question Plaintiff's credentials, they are not actionable because "it is generally settled as a matter of defamation law" that "a question, however embarrassing or unpleasant to its subject, is not accusation."  *Abbas v. Foreign Policy Grp.*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (Kavanaugh, J.) (cleaned up).  Moreover, Plaintiff fails to plausibly allege facts that, if proven, would establish that Bouzy posted those tweets with "actual malice" fault – *i.e.*, that he *knew* they were false or was *aware* they were probably false, yet published them anyway.

Second, the tweets describing Plaintiff's own account of law enforcement work are not actionable because they link to the video footage at issue and then express protected opinions, and because he again fails to plausibly plead actual malice fault.  Third, the tweets labelling Plaintiff a "grifter" are non-actionable opinions, and were not posted with actual malice given his *own* use of the term.

Plaintiff's tag-along claims for false light invasion of privacy and intentional interference with prospective business advantage also fail at the outset under the First Amendment and state law.  The Court should dismiss Plaintiff's Complaint and, because the tweets are nonactionable as a matter of law such that any attempt at amendment would be futile, the dismissal should be with prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    Bot Sentinel's YouTube Report

Defendant Bouzy is an independent social media researcher and data analyst.

In 2018, he founded Bot Sentinel, a platform designed to "help fight

disinformation and targeted harassment" online.  *See* Compl. ¶ 44 (quoting

https://botsentinel.com/info/about).  More specifically, Bot Sentinel "uses machine

learning and artificial intelligence to classify Twitter accounts, and then adds the

accounts to a publicly available database that anyone can browse."  *Id.* ¶ 45.  Bot

Sentinel's work has been reported on by many news organizations, and Bouzy is

recognized as an authoritative voice on this subject.  *Id.* ¶¶ 61-69; *see also*

https://botsentinel.com/newsroom/press (collecting press coverage).

On September 13, 2022, Bot Sentinel published a report titled *YouTube*

*Policy Violations* (the "YouTube Report").  *See id.* ¶¶ 72-74.[3]  After examining

"29 YouTube channels and analyz[ing] over 35,000 transcripts," Bot Sentinel

found that each of those channels "contained multiple policy violations," such as

"threats of violence, racism, [and] transphobia."  YouTube Report at 3.  One of

---

[3] The YouTube Report is available at https://botsentinel.com/reports/documents/
youtube/report-09-13-22.pdf.  The Court may consider the report, the parties'
tweets, and the videos they reference in ruling on this motion without converting it
into a summary judgment motion because they are "integral to or explicitly relied
upon in the complaint," *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410,
1426 (3d Cir. 1997), and "necessary to place [challenged] comments in context,"
*Ganske v. Mensch*, 480 F. Supp. 3d 542, 545-46 (S.D.N.Y. 2020), as required.

those channels belonged to an affiliate of "LawTube," an "informal group" of "lawyers with law-oriented YouTube channels who 'livestream' – often as a group appearing on one channel – legal commentary and discussion."  Compl. ¶ 12. These "LawTubers" saw the YouTube Report as an attack on them.  *Id.* ¶ 72.

Plaintiff, a LawTube member, joined in their criticism on September 15, 2022, when he posted a tweet asserting that "Bot Sentinel is a paid propaganda firm," and two days later when Plaintiff and another member of the LawTube community published a video criticizing Bouzy and Bot Sentinel for the YouTube Report.[4]  Bouzy pointedly responded to their criticism on Twitter, characterizing Plaintiff and his colleague as "[l]awyers [who] are defending a man who said Meghan Markle should be 'shot at dawn' and . . . 'strangled to death.'"[5]

## II.    Bouzy Begins Researching And Writing About Plaintiff

After Plaintiff put himself on Bouzy's radar as a defender of those who Bouzy views as corrosive to online discourse, Bouzy began to research and write about Plaintiff's background.  Exs. 1-6, 8.  Bouzy first published a series of tweets

---

[4] *See* https://twitter.com/NatetheLawyer/status/1570529174519160832 (tweet) (attached as Ex. 29 to the Certification of William P. Reiley; hereafter "Ex. __") and https://www.youtube.com/watch?v=9k3rds5Htc0 (video) (Ex. 23).

[5] *See* https://twitter.com/cbouzy/status/1571200195274088448 (Ex. 30).  Bouzy was referring to the LawTubers' defense of "Trevor Coult MC," whom the YouTube Report described as having "engaged in threats of violence, racism, transphobia, and other policy violations."  YouTube Report at 3.

questioning whether Plaintiff "is a legit lawyer or just a social media lawyer," after being unable to find proof that Plaintiff was a licensed attorney. Compl. ¶ 76. Upon learning that Plaintiff's last name is Broughty, not "Broady," Bouzy tweeted that Plaintiff is indeed a licensed attorney and deleted the earlier tweets. *Id.*

Bouzy's examination of Plaintiff continued when he published an excerpt of a December 2020 LawTube video in which Plaintiff discussed his transition from police officer to prosecutor. *Id.* ¶ 92.[6] Plaintiff stated that "the one bad thing about being first in law enforcement, then becoming an ADA, is that [he] wasn't like all the other new ADAs that are coming out of school."[7] As Plaintiff put it:

> Now most of the people who are making the arrests, bringing suspects
> to us, I knew those guys . . . . And then I knew all the BS, too. I'm
> like, 'Come on, you didn't find that thing in that guy's pocket, why
> are you bullshitting me?' . . . 'cause now I knew all the tricks 'cause,
> you know what, I was doing all that shit, too.

*Id.* Bouzy posted several more tweets criticizing Plaintiff for this statement (the "BS Statement"), Exs. 10-15, characterizing it as an admission that, while serving in law enforcement, Plaintiff had planted evidence on suspects. Compl. ¶¶ 93-100.

---

[6] *See* https://twitter.com/cbouzy/status/1572212550762369026 (Tweet 9; Ex. 9). Plaintiff's Complaint quotes or screenshots some but not all of the challenged tweets, and in some instances selectively omits portions of them. For the Court's convenience, Defendant has attached to the Reiley Certification a complete set of the tweets at issue and has summarized them in a chart appended to this brief.

[7] The Complaint expressly refers to the video, at ¶ 92 & Ex. A, and the full version is available at https://www.youtube.com/watch?v=Wr3RCHpDr24 (Ex. 24).

Later that day, Plaintiff published a video responding to Bouzy's criticism of the BS Statement.[8]  Plaintiff admitted that the BS Statement sounded "horrible," even if Bouzy's interpretation was "stretching a little bit."  Ex. 25 at 10:00 - 19:05. Plaintiff conceded the BS Statement was "clunky" and he "should have been more clear when [he] said it."  *Id.*  Plaintiff nevertheless reiterated that he knew "how the cops operated," "what they were doing," "where they cut corners," and "how they tried to make cases even stronger" for prosecutors.  *Id.*  Plaintiff added, "unfortunately, sometimes, [he] would use some of those same things, because that's what they trained you.  They trained you to try to make the best case."  *Id.*

In the same video, Plaintiff agreed that raising donations from LawTube supporters in response to Bouzy was a "good grift," referring to such contributions as "Bouzy Bucks."  *Id.* at 6:51 - 7:10.  Later in the video, Plaintiff elaborated:

> The grift is on.  You know what, Bouzy, when you tell people the grift, when you tell people exactly what you're doing, which I have done, no one is stupid.  Everyone here knows what I'm doing. They've had it explained to them.  And they're still giving. . . .  And you know what we're going to do tomorrow?  We're going to be back here tomorrow, pissing you off, and grifting you again.  Because the only thing you are to me is a paycheck.

*Id.* at 56:47 - 57:20.  As a result, Plaintiff explained, it would be hard to bring a defamation claim because he "can't say" Bouzy's tweets "hurt [him] financially." *Id.* at 1:02:45 - 1:03:19; *see also id.* (admitting they were "actually helping" him).

---

[8] *See* https://www.youtube.com/watch?v=_IPC0a2YKz8 (Ex. 25).

Finally, in the same video, Plaintiff laid out his "plan" to send Bouzy a cease-and-desist letter and to "pray that he doesn't stop," so Plaintiff could then "file a defamation lawsuit." *Id.* at 50:20-39.  Plaintiff's counsel sent such a cease-and-desist letter to Bouzy on September 29, 2022.  *See* Compl., Ex. B.  Rather than allowing that demand to silence him, Bouzy posted additional tweets, criticizing Plaintiff's fundraising to pursue his threatened lawsuit, *id.* ¶¶ 108-09; Exs. 7, 19-22, as well as three additional tweets about Plaintiff, Compl. ¶ 107; Exs. 16-18.

## III.   This Lawsuit

Plaintiff filed this lawsuit on October 28, 2022, in New Jersey Superior Court.  *See* Notice of Removal (ECF No. 1) at 1.  The Complaint includes a lengthy – and irrelevant – attack on Bouzy's professional background.  Compl. ¶¶ 28-60.  Plaintiff ultimately gets to the matter at hand, asserting claims for defamation *per quod* (Count I), defamation *per se* (Count II), false light invasion of privacy (Count III), and intentional interference with prospective business advantage (Count IV).  Broadly speaking, the Complaint challenges four categories of Bouzy's tweets: (1) tweets questioning whether Plaintiff was an attorney and former prosecutor, *id.* ¶¶ 76, 78-82; (2) tweets criticizing Plaintiff over the BS Statement, *id.* ¶¶ 92-96, 98-100, 105-06; (3) tweets characterizing Plaintiff as a "grifter," *id.* ¶¶ 84, 108-09; and (4) three "other" tweets, *id.* ¶ 107.  The Complaint seeks compensatory damages, punitive damages, an order directing Bouzy to

retract his challenged tweets, an order requiring him to "arrange for and purchase corrective advertising in such form and in such publications and media as shall be determined by the Court," and an award of attorneys' fees and costs. *Id.* at 31-32.

On November 4, 2022, Bouzy removed the action to this Court. ECF No. 1. On December 7, 2022, the Court entered a Consent Order (ECF No. 9) setting a schedule for briefing on Bouzy's motion to dismiss. Pursuant to that Order and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Bouzy now moves to dismiss Plaintiff's Complaint, with prejudice, for failure to state a claim.

## ARGUMENT

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In particular, "[a] claim has facial plausibility" only where a court can "draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (emphasis added). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (emphasis added and internal marks omitted).

In a defamation case, the task of evaluating the sufficiency of a complaint at this preliminary stage is also one of constitutional importance:

> The First Amendment guarantees freedom of speech and freedom of
> the press.  Costly and time-consuming defamation litigation can
> threaten those essential freedoms.  To preserve First Amendment
> freedoms and give reporters commentators, bloggers, and tweeters
> (among others) the breathing room they need to pursue the truth, the
> Supreme Court has directed courts to expeditiously weed out
> unmeritorious defamation suits.

*Kahl v. Bureau of Nat'l Affs.*, 856 F.3d 106, 108 (D.C. Cir. 2017) (Kavanaugh, J.).

Moreover, pre-discovery adjudication of defamation claims is particularly effective

because "in a libel suit the central event – the communication about which suit has

been brought – is ordinarily before the judge at the pleading stage.  He or she may

assess it upon a motion to dismiss, firsthand and in context."  2 Robert D. Sack,

*Sack on Defamation* § 16.2.1 (5th ed. 2017) (footnote omitted).  Courts routinely

adjudicate defamation claims at the motion to dismiss stage.  *See, e.g.*, *McCafferty*

*v. Newsweek Media Grp.*, 955 F.3d 352, 357-60 (3d Cir. 2020) (affirming

dismissal of defamation claims because challenged statements were non-actionable

opinion and for failure to plausibly plead actual malice); *Pace v. Baker-White*, 850

F. App'x 827, 833 (3d Cir. 2021) (same).  For all the reasons below, this Court

should do the same here and dismiss Plaintiff's Complaint with prejudice.

## I.  THE FIRST AMENDMENT AND NEW YORK LAW IMPOSE A SERIES OF THRESHOLD HURDLES FOR PLAINTIFF.

Because defamation cases involve the intersection of First Amendment law

and state law, this Court properly applies Third Circuit law to constitutional issues,

and, as explained below, applies New York law here on questions of state law.

9

In a "multistate defamation" case such as this one, where the parties reside in different states and the statements at issue were published through a mass communications medium such as Twitter, courts must decide at the outset of the litigation which state law governs.  "It is well established that in a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case," *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007), and thus New Jersey choice-of-law rules apply. Under those rules, "the law of plaintiff's domicile will apply in libel and privacy actions if publication occurred there." *Cibenko v. Worth Publishers*, 510 F. Supp. 761, 766 (D.N.J. 1981) (citing Restatement (Second) of Conflict of Laws § 150); *accord Prager v. ABC*, 569 F. Supp. 1229, 1232 (D.N.J. 1983) ("since [plaintiff] is an individual, a natural person, under the references cited the law of the State of his domicile controls his claim"), *aff'd without op.*, 734 F.2d 7 (3d Cir. 1984).

Here, Plaintiff is a New York resident.  *See* Compl. ¶ 1; Notice of Removal ¶ 5.  New York law therefore governs his claims in this case.  *See, e.g.*, *Fairfax Fin. Holdings v. S.A.C. Cap. Mgmt.*, 160 A.3d 44, 77 (N.J. Super. Ct. App. Div. 2017) (applying New York law to defamation-like claims where "New York is the state where the [allegedly] harmful communications caused the greatest [alleged] injury to plaintiffs' reputation") (alterations omitted).

10

Because New York law applies, Plaintiff must establish each of the following elements to state a claim for defamation: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *BYD Co. v. VICE Media*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021), *aff'd*, No. 21-1097, 2022 U.S. App. LEXIS 5351 (2d Cir. Mar. 1, 2022) (summary order), *cert. denied*, 143 S. Ct. 103 (2022).  The Federal Rules, New York law, and the First Amendment thus oblige the Court to address a series of threshold issues to assess whether Plaintiff plausibly pleads these elements.

**A.  The Challenged Speech Must State Facts, Not Express Opinions.**

First, "courts are tasked with distinguishing between statements of fact, which may be defamatory, and expressions of opinion, which are not defamatory; instead, they receive absolute protection" under both the First Amendment and the New York Constitution.  *Ganske*, 480 F. Supp. 3d at 551 (cleaned up); *accord Brimelow v. New York Times Co.*, No. 20 Civ. 222 (KPF), 2020 U.S. Dist. LEXIS 237463, at *13 (S.D.N.Y. Dec. 17, 2020) (recognizing the "even more free-speech-protective standard under the New York State Constitution for determining what constitutes non-actionable opinion"), *aff'd*, No. 21-66-cv, 2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022).  "Whether a statement constitutes a fact or opinion is a legal question resolved by the court."

*Kerrigan v. Otsuka Am. Pharm.*, 560 F. App'x 162, 168 (3d Cir. 2014) (affirming

dismissal on opinion grounds); *see also Levin v. McPhee*, 119 F.3d 189, 196-97

(2d Cir. 1997) (same under both First Amendment and New York law).

 In making this threshold determination, courts properly consider the

statement itself as well as its "immediate context and broader social context." *Id.*

at 197.  In addition to considering other surrounding communications, courts

consider the medium in which the communication at issue was published.  In that

regard, courts "have consistently protected statements made in online forums as

statements of opinion rather than fact." *Ganske*, 480 F. Supp. 3d at 552 (collecting

cases); *Sandals Resorts Int'l v. Google*, 86 A.D.3d 32, 43 (1st Dep't 2011)

("Internet communications, as distinct from that of print media such a newspapers

and magazines," are more likely to contain opinions because of their informal,

"freewheeling, anything-goes writing style").

 Governing law recognizes two types of nonactionable opinions.  One is a

classic subjective opinion – *i.e.*, what "[a] reasonable reader would likely view" as

the speaker's own "opinion and not conveying any objective facts." *Ganske*, 480

F. Supp. 3d at 554; *e.g.*, *Jacobus v. Trump*, 51 N.Y.S.3d 330, 341 (Sup. Ct. 2017)

(tweets calling plaintiff "a real dummy" and "really dumb" are protected opinions),

*aff'd*, 64 N.Y.S.3d 889 (App. Div. 2017).  The other is an opinion that is "either

'accompanied by a recitation of the facts upon which it is based' or 'does not imply

that it is based upon undisclosed facts.'" *Biro v. Condé Nast*, 883 F. Supp. 2d 441,

461 (S.D.N.Y. 2012) (quoting *Steinhilber v. Alphonse*, 501 N.E.2d 550, 552 (N.Y.

1986)); *see also McCafferty*, 955 F.3d at 358 (same).  Thus, "if a statement of

opinion either discloses the facts on which it is based or does not imply the

existence of undisclosed facts, the opinion is not actionable." *Levin*, 119 F.3d at

197; *Gross v. New York Times Co.*, 623 N.E.2d 1163, 1168 (N.Y. 1993) (same).

This protection applies even where the conclusion might in isolation sound

like a statement of fact, including an allegation of criminal conduct.  *See, e.g.*,

*Chau v. Lewis*, 771 F.3d 118, 128-29 (2d Cir. 2014) (comments about 2008

financial crisis in *The Big Short*, including statements that people like plaintiff

were either "crooks or morons," were deliberately "getting lots of unqualified

borrowers to . . . buy a house they couldn't afford," and were creating financial

instruments out of "whole cloth," were protected expressions of opinion); *CACI*

*Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 299-302 (4th Cir. 2008) (statements

that company employed "mercenaries" and "hired killers," who "want to kill for

the sake of killing," "torture people," and "never have to come under the long arm

of the law" were protected opinions); *Lauderback v. ABC*, 741 F.2d 193, 196-98

(8th Cir. 1984) (broadcast suggesting that plaintiff was a "crook" was protected

opinion based on disclosed facts); *Small Bus. Bodyguard v. House of Moxie*, 230 F.

Supp. 3d 290, 312 (S.D.N.Y. 2017) (conclusion that plaintiff "engaged in

'extortion, manipulation, fraud, and deceit" was protected opinion); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (statement that plaintiff was "2-bit thief and counterfeiter" based on news articles was protected opinion).

Because, as explained below, many of the tweets at issue here are protected expressions of opinion, they are nonactionable and the claims as to them fail.

## B.    Plaintiff Must Demonstrate That The Challenged Speech Is False.

If the challenged publication is a statement of fact, the court must determine whether the plaintiff has plausibly alleged that the statement is false.  While truth was a *defense* at common law, both the U.S. Supreme Court and the New York courts now require that "the *plaintiff* bear[s] the burden of showing falsity."  *Phila. Newspapers v. Hepps*, 475 U.S. 767, 776 (1986) (emphasis added); *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1275 (N.Y. 1991) ("a libel plaintiff has the burden of showing the falsity" of the challenged statement).  And because "falsity – or lack of substantial truth – is an element of a New York defamation claim, it follows that a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court."  *Tannerite Sports v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).  Thus, a plaintiff "generally must identify *how* the defendant's statement was false to survive a motion to dismiss."  *Id.* at 245 (emphasis added); *see also Wright v. Dennis*, No. 0604318/2006, 2008 WL 475914 (N.Y. Sup. Ct. Feb. 11, 2008) (dismissing

defamation claim because plaintiff "fail[ed] to plead, and would be unable to prove, the falsity of the defamatory statement").

Demonstrating literal falsity alone will not suffice: a defamation plaintiff must show that the challenged publication is *materially* false, which is to say not *substantially* true. *Tannerite Sports*, 864 F.3d at 242 (citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 516 (1991)). Because, as explained below, many of the challenged tweets are plainly true, Plaintiff's claims as to them fail.

### C. Plaintiff Must Plausibly Allege That Defendant Published The Challenged Speech With Constitutional "Actual Malice" Fault.

Finally, even if a challenged statement is both a *statement of fact* and *materially false*, the plaintiff must also show that it was made the requisite degree of fault – here, constitutional actual malice. Indeed, "[b]efore the test of reckless or knowing falsity can be met, there must be a *false* statement of *fact*." *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (emphases added).

As explained below, Plaintiff is required here to plead *facts* that, if proven, would constitute clear and convincing evidence that Bouzy posted the challenged tweets with actual malice. Actual malice is a term of art meaning that a defendant published a challenged statement either knowing it was false or with a "high degree of awareness of [its] probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). The standard adopted in *Iqbal* and *Twombly* applies to *pleading* "actual malice" fault as an essential element of a defamation claim. *Biro v. Condé Nast*,

807 F.3d 541, 544-45 (2d Cir. 2015).  Indeed, "every circuit that has considered the

matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may

be dismissed for failure to state a claim where the plaintiff has not pled facts

sufficient to give rise to a reasonable inference of actual malice."  *Michel v. NYP*

*Holdings*, 816 F.3d 686, 701-02 (11th Cir. 2016) (collecting cases).[9]  As a result,

"[a]ctual malice is a high bar" even at the motion to dismiss stage.  *See, e.g.*,

*McCafferty*, 955 F.3d at 359 (noting that "[t]he First Amendment requires this

demanding standard" and affirming dismissal for, *inter alia*, failure to plausibly

plead actual malice); *McDougal v. Fox News Network*, 489 F. Supp. 3d 174, 185,

188 (S.D.N.Y. 2020) (dismissing defamation claim where "the Court cannot find a

plausible inference that actual malice exists").

### 1.  Plaintiff is a Public Figure Required to Show Actual Malice.

Under the First Amendment, Plaintiff is a limited-purpose public figure

required to show actual malice.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342

---

[9] *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 57-58 (1st
Cir. 2012); *Biro*, 807 F.3d at 544-45; *McCafferty*, 955 F.3d at 360; *Mayfield v.
NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012); *Walker v. Beaumont Indep. Sch.
Dist.*, 938 F.3d 724, 745 (5th Cir. 2019); *Ryniewicz v. Clarivate Analytics*, 803 F.
App'x 858, 868 (6th Cir. 2020) (defamation plaintiff failed to make plausible
allegation of actual malice necessary to overcome state-law qualified privilege);
*Pippen v. NBCUniversal Media*, 734 F.3d 610, 614 (7th Cir. 2013); *Nelson Auto
Ctr. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020); *Yeager v.
NPR*, 773 F. App'x 1030, 1031-32 (10th Cir. 2019); *Turner v. Wells*, 879 F.3d
1254, 1273-74 (11th Cir. 2018); *Tah v. Global Witness Publ'g*, 991 F.3d 231, 239-
40 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021).

(1974).  That is because he alleges facts confirming that he "voluntarily injected himself into" a public controversy and "enjoys significantly greater access to the channels of effective communication than his peers."  *McCafferty*, 955 F.3d at 359 (cleaned up).  Specifically, Plaintiff alleges that his "Nate the Lawyer Channel has collected over 27.6 million views" and "approximately 255,000 subscribers."  Compl. ¶ 2; *see McCafferty*, 955 F.3d at 359 (plaintiff is limited-purpose public figure where "[o]ne of [his] videos has been watched hundreds of thousands of times").  Plaintiff further alleges that he regularly injects himself into public controversies as part of the group of LawTube commentators.  Compl. ¶¶ 12, 17-27.  Indeed, in the months preceding this lawsuit, Plaintiff published videos about, *inter alia*, the overturning of *Roe v. Wade*, the mass shooting in Uvalde, Texas, the claims against Alex Jones, the FBI's execution of a search warrant at Mar-a-Lago, and the high-profile litigation between Johnny Depp and Amber Heard.[10]

Courts throughout the country routinely hold that reporters and commentators like Plaintiff are public figures because they play a prominent role in the debate over controversies they address and because discussion and criticism of their work is relevant to their credibility.  *See, e.g.*, *Farber v. Jefferys*, 959 N.Y.S.2d 486, 487 (App. Div. 2013) (journalist was public figure because "through

---

[10] *See* https://www.youtube.com/@NateTheLawyer/videos.

her publication of countless articles, she voluntarily injected herself into the

controversial debate on whether HIV causes AIDS with a view toward influencing

the debate").[11]  In that regard, Plaintiff expressly pleads that, as a member of

LawTube, he "depend[s] for [his] popularity in large part on how potential viewers

perceive [his] experience, professional knowledge and, above all, credibility."

Compl. ¶ 16.  Thus, Plaintiff's own pleadings confirm that he is a limited-purpose

public figure for purposes of defamation law.  *See McCafferty*, 955 F.3d at 359

(affirming dismissal where plaintiff "is a limited-purpose public figure"); *Celle v.*

*Filipino Rep. Enters.*, 209 F.3d 163, 176 (2d Cir. 2000) (defamation plaintiff's

status as a public figure "is a question of law for the court"); *Turner*, 879 F.3d at

1271 (court had "little difficulty" concluding plaintiff was public figure at motion-

to-dismiss stage).

---

[11] *See also, e.g.*, *Houlahan v. World Wide Ass'n of Specialty Programs & Schs.*,
No. 04-01161(HHK), 2006 U.S. Dist. LEXIS 71858, at *8 n.4 (D.D.C. Sept. 29,
2006) (UPI reporter covering the "teen behavior modification industry" was
limited-purpose public figure regarding statements criticizing his reporting);
*Braden v. News World Commc'ns*, No. CA-10689'89, 1991 WL 161497, at *8-9
(D.C. Super. Ct. Mar. 1, 1991) (former host of CNN's *Crossfire* was a public
figure); *Ellis v. Time, Inc.*, No. Civ.A. 94-1755 (NHJ), 1997 WL 863267, at *6
(D.D.C. Nov. 18, 1997) (photojournalist was limited-purpose public figure in
connection with his public criticism of another news organization's photography
practices); *Jacobson v. CBS*, 19 N.E.3d 1165, 1176-78 (Ill. Ct. App. 2014) (local
television reporter was public figure in context of report calling into question her
relationship with source); *San Antonio Express News v. Dracos*, 922 S.W.2d 242,
252-53 (Tex. Ct. App. 1996) (observing that "journalists and television reporters
. . . as well as other individuals who regularly comment on public affairs, have
often been considered public figures" and collecting cases).

### 2.  Plaintiff Must Also Show Actual Malice Under New York Law.

Even if Plaintiff were not a public figure under the First Amendment, he is separately required to show actual malice as a matter of New York law.  A recent expansion of New York's anti-SLAPP law requires any defamation plaintiff suing over speech made "in a place open to the public or a public forum in connection with an issue of public interest" to prove that the defendant published the allegedly defamatory statement with "actual malice."  N.Y. Civ. Rights Law § 76-a.[12]

An issue of public interest "encompass[es] all but purely private matters." *Coleman*, 523 F. Supp. 3d at 259 (email and letter describing allegedly abusive romantic relationship and circulated among industry contacts was sent "in connection with an issue of public interest"); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021) (same, for statements about allegations against plaintiff on news websites "open to the

---

[12] Although courts are grappling with whether to apply a burden-shifting provision of New York's anti-SLAPP law in federal court, "a federal court sitting in diversity must apply § 76-a because it is a substantive, rather than a procedural, provision." *Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020); *see also Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) (Section 76-a "is 'manifestly substantive,' governing the merits of libel claims and increasing defendants' speech protections").  The anti-SLAPP law also mandates an award of attorneys' fees to defendants who prevail in meritless SLAPP suits.  N.Y. Civ. Rights Law § 70-a.  Because such a fee-shifting provision is also a substantive aspect of state law, it, too, applies in federal court.  *See Harris v. Am. Acct. Ass'n*, No. 5:20-CV-01057 (MAD/ATB), 2021 U.S. Dist. LEXIS 226517, at *35-40 (N.D.N.Y. Nov. 24, 2021) (awarding attorneys' fees on that basis).  Bouzy thus reserves his right under Section 70-a to seek an award of his attorneys' fees.

public"), *aff'd on other grounds sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-cv, 2022 U.S. App. LEXIS 9086 (2d Cir. Apr. 5, 2022) (summary order); *Goldman v. Reddington*, No. 18-cv-3662 (RPK) (ARL), 2021 U.S. Dist. LEXIS 171340, at *10-11 (E.D.N.Y. Sept. 9, 2021) ("Facebook and LinkedIn posts accusing [plaintiff] of sexual assault" related to "more than 'a purely private matter'"); *Aristocrat Plastic Surgery v. Silva*, 169 N.Y.S.2d 272, 276-77 (App. Div. 2022) (collecting cases and concluding that "defendant's negative website reviews of plaintiffs' services constitute a matter of 'public interest' as set forth in" Section 76-a).

Here, Bouzy published his statements in a forum open to the public, Twitter, in connection with several issues of public interest, including (a) whether Plaintiff was licensed by the State of New York as an attorney and served as a prosecutor;[13] (b) his account of his work as a prosecutor and police officer, including whether he and other law enforcement officials engaged in misconduct; and (c) his efforts to fundraise off members of the public, including based on threatening to sue Bouzy for engaging in public commentary about topics (a) and (b).  Accordingly, under

---

[13] Indeed, even under an earlier, much narrower version of New York's anti-SLAPP law, a claim arising from speech about a permittee or licensee was deemed to be an "action involving public petition and participation" requiring proof of actual malice.  *See* N.Y. Civ. Rights Law § 76-a (2018).

New York law, Plaintiff is also required to plausibly allege that Bouzy published the tweets at issue with actual malice.

Thus, to survive this motion to dismiss, Plaintiff must plead sufficient facts that, if proven, would constitute clear and convincing evidence that Bouzy published the tweets at issue with knowledge that they were false or despite a high degree of awareness that they were probably false.  A complaint "us[ing] actual-malice buzzwords" that are not "backed by well-pled facts" does not satisfy that standard.  *Schatz*, 669 F.3d at 56; *see also Lee v. TMZ Prods.*, 710 F. App'x 551, 560 (3d Cir. 2017) (affirming Rule 12(b)(6) dismissal of defamation claim for, *inter alia*, failing to plausibly plead actual malice).[14]

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION.

Applying the tests above to the challenged tweets, Plaintiff fails to state a viable defamation claim as a matter of law.  Some of the challenged tweets are constitutionally protected expressions of pure opinion or opinions based upon

---

[14] The actual malice rule has an additional consequence here.  Plaintiff has asserted claims for both defamation *per se* (which applies to defined categories of defamatory statements for which damages are presumed) and defamation *per quod* (other statements as to which plaintiff must plead and prove actual damages).  Here, plaintiff has admitted that Bouzy's statements have in fact helped him financially, so he has no actual damages.  *See* page 6 *supra*.  And, under settled constitutional law, even if he were a private figure, Plaintiff could not recover either presumed or punitive damages without pleading and proving actual malice.  *See, e.g.*, *Gertz*, 418 U.S. at 349.  Because Plaintiff cannot establish a basis for recovering either actual or presumed damages flowing from the challenged statements, his claim fails for that reason as well.

disclosed facts, others are statements of fact but are not materially false, and not a single one of the tweets was published with actual malice.  While we address the tweets below by number, but grouped by category, we are also supplying for the Court's convenience, as an Appendix to this brief, a chart noting the basis for dismissal for each of the 22 challenged tweets, including because in most instances there are multiple grounds for dismissal applicable to each of them.

### A. Plaintiff Fails To State A Claim As To Tweets About His Credentials and Background.

Tweets 1-6 and 8 address Plaintiff's credentials and background and are nonactionable for multiple reasons.

We begin with Tweets 2-5, in which Bouzy expressed confusion as to why he cannot locate an attorney by the name of "Nate Broady" in the New York State Unified Court System's Attorney Online Services Search.  Compl. ¶¶ 76, 78; Exs. 2-5.  The Complaint attempts to obfuscate that point by cropping the screenshot of Tweet 2, but that tweet clearly includes an image identifying Plaintiff as "Nate Broady."[15]  As the Complaint itself alleges, upon learning that Plaintiff's surname is actually Broughty, not "Broady," Defendant Bouzy subsequently acknowledged that Plaintiff is a licensed attorney and deleted his earlier tweets.  Compl. ¶ 79.

---

[15] *See* Ex. 2; https://www.youtube.com/watch?v=sMSU4W2r14E (Ex. 26).

These tweets thus cannot give rise to a defamation claim for four reasons. First, the challenged statements – that Bouzy "can't find" a lawyer named "Broady" in "the database where he claims he practices law," that Bouzy "can't tell if [Plaintiff] is a legit lawyer or just a social media lawyer," and that Bouzy "still can't find [Plaintiff's] bar association number" – are substantially true because Bouzy *could not possibly* have found such information about an individual named "Nate Broady."  *See, e.g.*, *Libre By Nexus v. BuzzFeed*, 311 F. Supp. 3d 149, 155-58 (D.D.C. 2018) (dismissing claim because statement was not "plausibly false" given complaint's factual allegations and document hyperlinked in article).

Second, the tweets simply raise questions about whether Plaintiff is actually a licensed attorney.  But, as a matter of law, questions are not actionable statements of fact.  *See Abbas*, 783 F.3d at 1338 (questions are not actionable because they "indicate a defendant's 'lack of definitive knowledge about the issue'") (quoting *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995)); *Chapin v. Knight-Ridder*, 993 F.2d 1087, 1094 (4th Cir. 1993) ("inquiry itself, however embarrassing or unpleasant to its subject, is not accusation").

Third, to the extent Plaintiff construes these tweets to *imply* that he "was lying about his credentials," *see* Compl. ¶ 76, the tweets disclose the basis for that conclusion: namely, a screenshot of Plaintiff's interview identifying him as "Nate Broady" and a link to the online search portal for New York attorneys where no

23

attorney named "Nate Broady" can be found.  *Id.*[16]  To the extent that Tweets 2-5

imply that Plaintiff is not an attorney, therefore, that implication is shielded by the

branch of the opinion doctrine that protects conclusions – both express and implied

– based on disclosed facts.  *Biro*, 883 F. Supp. 2d at 468 ("If the Constitution

protects an author's right to draw an explicit conclusion from fully disclosed facts,

then an unstated inference that may arise in a reader's mind after reading such facts

is also protected as an implicit expression of the author's opinion.").

<u>Fourth</u>, these tweets cannot give rise to a defamation claim because Plaintiff

has failed to allege *any* facts that, if true, would demonstrate Bouzy published them

with actual malice.  Rather, the Complaint itself dispels the notion that Bouzy

published these tweets with knowledge of their falsity because the Complaint

*admits* that Bouzy "learned that Mr. Broughty is, in fact, a New York attorney"

only *after* publishing these tweets.  Compl. ¶ 79.  Actual malice, however, requires

knowledge of falsity "at the time of publication."  *Bose Corp. v. Consumers Union*,

466 U.S. 485, 512 (1984).  Plaintiff thus alleges, at most, that Bouzy made a

mistake in initially believing that Plaintiff's surname is "Broady" and searching for

---

[16] The hyperlink in Tweet 2 is the beginning of the URL for the attorney search
portal, https://iapps.courts.state.ny.us/attorneyservices/search.  Such a "hyperlink is
the twenty-first century equivalent of the footnote for purposes of" defamation law
and "instantaneously permits the reader to verify an electronic article's claims."
*Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413
(2d Cir. 2017).

that name, unsuccessfully, in the attorney directory.  But, as a matter of law, such "a mistake does not establish actual malice."  *Celle*, 209 F.3d at 193.[17]

To be sure, Plaintiff conclusorily asserts toward the end of his Complaint that Broughty "made and published the false statements alleged above knowing that they were false or with a reckless disregard for the truth."  Compl. ¶¶ 114, 119. But such a bare assertion that

> defendants' statements "'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient.  This kind of conclusory allegation – mere recitation of the legal standard – is precisely the sort of allegations that *Twombly* and *Iqbal* rejected."

*Biro v. Condé Nast*, 963 F. Supp. 2d 255, 280 (S.D.N.Y. 2013) (quoting *Mayfield*, 674 F.3d at 377-78), *aff'd*, 807 F.3d 541 (2d Cir. 2015).  For each of these reasons, therefore, Plaintiff fails to state a claim for defamation arising out of Tweets 2-5.

Plaintiff also challenges three other tweets concerning his background. Tweet 1 refers to Plaintiff as "the son of two crackheads (his words)" and "a drug dealer (his words)."  Compl. ¶ 75; Ex. 1.  Though that tweet has been deleted, *see id.* ¶ 76, it referenced a November 29, 2020 interview that Plaintiff gave on a

---

[17] Bouzy's decision, upon subsequently learning Plaintiff's real name, to wait until others published that name so he "wouldn't be accused of 'doxxing'" Plaintiff, *see* Compl. ¶ 82, likewise cannot demonstrate that Bouzy published his *prior* tweets with knowledge of their falsity.  *See Bose Corp.*, 466 U.S. at 512.

podcast.[18]  During that interview, Plaintiff stated, "I'm the son of two crackheads.

My mom was a crackhead and my father was a crackhead."  *See* Ex. 27 at 2:29-

2:43.  Plaintiff also stated, "I dropped out of high school.  I sold drugs."  *Id.* at

9:12-9:56.  Because Tweet 1 accurately reports Plaintiff's own statements, and

describes them as "his words," he has failed to "plead facts demonstrating falsity"

and therefore cannot "prevail on a motion to dismiss the complaint."  *Tannerite*

*Sports*, 864 F.3d at 247; *Chapin*, 993 F.2d at 1091, 1094 (affirming Rule 12(b)(6)

dismissal where court found "[e]verything in these statements is true").  Moreover,

Plaintiff does not (and cannot) allege any facts that would demonstrate Bouzy

published Tweet 1 with actual malice since it was based on Plaintiff's own

statement.  *See, e.g.*, *Michel*, 816 F.3d at 705 (no plausible allegation of actual

malice in linking plaintiff to "a charity focused on Haiti given his *self-described*

reputation as a 'world-renown[ed] philanthropist' who has 'devoted much of his

life to assisting those in need in Haiti") (emphasis added).

    In Tweet 6, Bouzy concedes that Plaintiff "was a cop, and he became a

lawyer in 2016," but asserted that Plaintiff "was never a prosecutor."  Compl. ¶ 79.

Plaintiff alleges that "Bouzy had no factual basis whatsoever for this false claim,"

but the tweet actually includes the basis for this erroneous statement: a screenshot

of the New York State Unified Court System's Attorney Online Services Search

---

[18] *See* Ex. 1; https://www.youtube.com/watch?v=G30-SUw9dbU (Ex. 27).

result for Plaintiff's real name (redacting his personal information). *Id.* ¶ 80; Ex. 6.

That search result does not indicate that Plaintiff served as a prosecutor. *See*

Notice of Removal Ex. B (ECF No. 1 at 54). Even if Bouzy, a non-lawyer,

mistakenly took those search results to mean that Plaintiff was *never* a prosecutor,

such a mistaken interpretation does not constitute actual malice, particularly given

that Bouzy later deleted this tweet upon learning of the error. *See Farrakhan v.*

*NYP Holdings*, 638 N.Y.S.2d 1002, 1008 (Sup. Ct. 1995) ("even if defendants

misinterpreted [a] statement, such misinterpretation does not arise to a level of

constitutional malice"), *aff'd*, 656 N.Y.S.2d 726 (App. Div. 1997). Nor does it

matter "whether a reasonably prudent man would have published" Tweet 6 "or

would have investigated" further before posting it. *St. Amant v. Thompson*, 390

U.S. 727, 731 (1968). The question is whether a plaintiff "alleges [any]

nonconclusory facts that support the proposition that [defendant] knew that it was

reporting falsities." *BYD Co.*, 531 F. Supp. 3d at 823 (dismissing defamation

claim for failure to plausibly allege actual malice). Plaintiff alleges *no* such facts

in his Complaint, and thus he fails to state a claim for defamation as to Tweet 6.

Finally, in Tweet 8, Bouzy describes how he "grew up with Black men like"

Plaintiff and offers his personal assessment of Plaintiff's motivations for his

conduct, namely, that "Men like Nathaniel are not comfortable in their skin, so

they go out of their way to prove they are 'different' or 'better.'" Compl. ¶ 89;

Ex. 8.  This tweet is protected opinion because "[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior."  *McCafferty*, 955 F.3d at 359; *Immuno AG. v. Moor-Jankowski*, 549 N.E.2d 129, 134-35 (N.Y. 1989) ("Speculations as to the motivations . . . are not readily verifiable, and are therefore intrinsically unsuited as a foundation for libel."), *reaffirmed after remand by* 567 N.E.2d at 1281 (reiterating that "statements regarding plaintiff's motivations" were protected opinion); *Rappaport v. VV Publ'g*, 618 N.Y.S.2d 746, 750 (Sup. Ct. 1994) ("Courts have uniformly found that the question of . . . motivation is quintessentially subjective and therefore may not form the basis for an action for defamation."), *aff'd*, 637 N.Y.S.2d 109 (App. Div. 1996).  Plaintiff is free to disagree with those opinions, and to express his disagreement, but he cannot sue over them.

### B.    Plaintiff Fails To State A Claim As To The BS Statement.

Plaintiff also fails to state a claim over Tweets 9-15, in which Bouzy interprets the "BS Statement" as Plaintiff's admission that he planted evidence on suspects when he previously had worked as a police officer.  Compl. ¶¶ 92-99, 105-06; Exs. 9-15.  As discussed above, in the BS Statement Plaintiff asserted that he "wasn't like all the other new ADAs that are coming out of school" because

> [M]ost of the people who are making the arrests, bringing suspects to us, I knew those guys . . . .  And then I knew all the BS, too.  I'm like, "Come on, you didn't find that thing in that guy's pocket, why are you

> bullshitting me?" . . . 'cause now I knew all the tricks 'cause, you
> know what, I was doing all that shit, too.

*See* n.7 *supra.*  As expressed in these tweets, Bouzy took this statement to mean

that Plaintiff knew that arresting officers lie about finding evidence on a suspect

because Plaintiff had made the same false claims when he was a police officer.

These tweets cannot give rise to a viable defamation claim for two

independent reasons.  <u>First</u>, these tweets are nonactionable expressions of opinion

because they "disclose[] the facts on which [they are] based" and do "not imply the

existence of undisclosed facts."  *Levin*, 119 F.3d at 197.  Indeed, the New York

Court of Appeals has emphasized that

> even when uttered or published in a more serious tone, accusations of
> criminality could be regarded as mere hypothesis and therefore not
> actionable if the facts on which they are based are fully and accurately
> set forth and it is clear to the reasonable reader or listener that the
> accusation is merely a personal surmise built upon those facts.

*Gross*, 623 N.E.2d at 1169.  Here, Plaintiff does not dispute that he made the BS

Statement, and that Bouzy disclosed the BS Statement as the basis for his tweets.

Nor does Plaintiff allege that Bouzy implied that the statements were based on any

other, undisclosed facts.  *See* Compl. ¶¶ 92-99.  These tweets are thus

nonactionable expressions of opinion as a matter of law.

<u>Second</u>, even if the Court were to treat these tweets as containing statements

of fact, Plaintiff fails to plausibly allege that Bouzy published them with actual

malice.  Plaintiff has himself admitted that the BS Statement sounded "horrible"

and "clunky," as well as that he "should have been more clear when [he] said it."
*See* n.8 *supra*. Plaintiff believes that Bouzy's interpretation of the BS Statement is
"stretching a little bit," *id.*, but when challenged speech conveys a defendant's
interpretation of potentially ambiguous underlying material, that interpretation,
even if "arguably reflecting a misconception," does not rise to the level of a
knowing or calculated falsehood as a matter of law. *Time, Inc. v. Pape*, 401 U.S.
279, 290 (1971); *see also Masson*, 501 U.S. at 519 ("The protection for rational
interpretation serves First Amendment principles by allowing an author the
interpretive license that is necessary when relying upon ambiguous sources.").
Simply put, actual malice cannot "be founded on the misinterpretation of a source
or the resolution of an ambiguity adversely to the plaintiff." *Suozzi v. Parente*, 616
N.Y.S.2d 355, 359 (App. Div. 1994).

Plaintiff attempts to cure this fatal defect by alleging that he sent Bouzy a
letter denying that he planted evidence and disputing Bouzy's interpretation of the
BS Statement, arguing that Bouzy's subsequent tweets were necessarily published
with actual malice. Compl. ¶ 103.[19] But such denials by a Plaintiff, "however
vehement," cannot establish actual malice because they "are so commonplace in

---

[19] Indeed, Plaintiff stated on video a month prior to filing this lawsuit that this was
his exact plan. *See* Ex. 25 at 48:35-48:55 (explaining he planned to "send [Bouzy]
a cease-and-desist" letter asserting that "the clip was taken out of context" and
"I've never done any of this stuff" so that, "if he says the statements again, then
I've got actual malice").

the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 691 n.37 (1989); *Prince v. Intercept*, 21-CV-10075 (LAP), 2022 U.S. Dist. LEXIS 183551, at \*40 (S.D.N.Y. Oct. 6, 2022) ("It is well established that denials without more are insufficient to support a plausible claim of actual malice.") (citing *Edwards v. Nat'l Audubon Soc'y*, 556 F.2d 113, 121 (2d Cir. 1977), and *Brimelow*, 2021 U.S. App. LEXIS 31672, at \*7-8); *MiMedx Grp. v. Sparrow Fund Mgmt.*, No. 17 Civ. 7568 (PGG), 2018 U.S. Dist. LEXIS 169669, at \*26 (S.D.N.Y. Sept. 29, 2018) ("[A]llegations that a speaker knew of a plaintiff's denial of wrongdoing are insufficient to establish actual malice."). Bouzy's tweets about the BS Statement thus cannot give rise to a viable defamation claim.

### C.    Plaintiff Fails To State A Claim Over Criticism Of His "Grifting."

Plaintiff likewise fails to state a claim over Tweets 7 and 19-22, in which Bouzy criticizes Plaintiff for his fundraising activities related to this lawsuit:

• In Tweet 7, Bouzy characterizes Plaintiff as "a YouTube grifter," Compl. ¶ 84, and in Tweet 21, Bouzy calls Plaintiff an "opportunistic grifter."[20]

---

[20] *See* Ex. 7; https://twitter.com/cbouzy/status/1584343241129791489 (Ex. 21).

• In Tweet 19, Bouzy states, "We are going to need more popcorn" and shows images mocking Plaintiff for his fundraising efforts, including a screenshot of a tweet in which Plaintiff had dubbed himself "Nate The Cashier | Bot Killer."[21]

• In Tweet 20, Bouzy states that Plaintiff had "figured out he could convince a bunch of gullible suckers to donate to his 'legal fund' by promising he could stop Bot Sentinel and me" and again includes screenshots highlighting that he recently dubbed himself "Nate The Cashier | Bot Killer."[22]

• In Tweet 22, Bouzy states that Plaintiff "spent a week raising $32,000 and telling people I will go through some things," but, "so far, all he has accomplished is to take money from people and make himself and [his attorney] richer."[23]

As an initial matter, it is absurd that Plaintiff takes issue with these tweets in particular given that he himself repeatedly characterized his own fundraising activity as a "grift."  *See* page 6 and n.8 *supra*.

In any event, Plaintiff asserts that these tweets *imply* "that [he] was stealing, or making personal use of, donations collected by him for legal fees in this action." Compl. ¶ 108.  But such a defamation-by-implication claim fails for multiple reasons.  For one, New York law is clear that "[c]ourts are not to render statements

---

[21] *See* https://twitter.com/cbouzy/status/1573298258277191680 (Ex. 19).

[22] *See* https://twitter.com/cbouzy/status/1581011864682926080 (Ex. 20).

[23] *See* https://twitter.com/cbouzy/status/1578008179249643520 (Ex. 22).

actionable by giving them a 'strained or artificial construction.'" *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 287 (S.D.N.Y. 2006) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (App. Div. 1999)).  These tweets convey Bouzy's view that Plaintiff is shamelessly fundraising based on this case, but nothing about them states or implies that Plaintiff is using those funds for anything *other* than this lawsuit.  *See, e.g.*, *Goldman v. Barrett*, No. 15 Civ. 9223 (PGG), 2016 U.S. Dist. LEXIS 145786, at *15 (S.D.N.Y. Aug. 24, 2016) (dismissing defamation-by-implication claim where, as here, "[f]airly read, the [challenged publication] does not suggest that Plaintiffs are engaged in . . . fraud").

For another, even if Plaintiff had never used the term "grifter" to describe himself, that term – like the corresponding reference to his donors as "a bunch of gullible suckers" – is clearly a nonactionable expression of opinion rather than a statement that is "capable of being proven true or false."  *Ganske*, 480 F. Supp. 3d at 553.  Rather, the term "grifter" is an example of "'rhetorical hyperbole' and 'imaginative expression' that is typically understood as a statement of opinion." *Id.*; *see also Biro*, 883 F. Supp. 2d at 463 ("[T]he use of the terms 'shyster,' 'con man,' and finding an 'easy mark' is the type of 'rhetorical hyperbole' and 'imaginative expression' that is typically understood as a statement of opinion.").

Finally, even if the tweets somehow implied that Plaintiff is using the funds he raised to support this case for other purposes, Plaintiff has once more failed to

plead *any* facts to demonstrate that Bouzy published the tweets with actual malice. Plaintiff asserts only that Bouzy published them "to impugn [his] character," Compl. ¶ 109, but "the actual malice standard is *not* satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term," *Harte-Hanks*, 491 U.S. at 666 (emphasis added); *see also Rinaldi v. Viking Penguin*, 420 N.E.2d 377, 382-83 (N.Y. 1981) ("Regard must be had too for the fact that 'malice,' a term which, as used in its First Amendment constitutional sense, is not to be equated with a base or unworthy motive"); *Walker*, 938 F.3d at 744 ("the constitutional focus is on the defendant's attitude toward the truth, not his attitude toward the plaintiff"). Such an allegation thus does not suffice to plausibly allege publication with actual malice fault. *See Brimelow*, 2021 U.S. App. LEXIS 31672, at *10 (affirming dismissal of defamation complaint for, *inter alia*, failing to plausibly allege actual malice, where plaintiff "alleged ill will toward [him] harbored" by defendant but "the Complaint provides no basis for plausibly inferring that [defendant] had any doubts about the truth of its statements" about plaintiff).

Moreover, to the extent that Plaintiff bases this aspect of his claims on an allegedly defamatory implication, he must plead (and ultimately prove) not only that Bouzy was subjectively aware of the probable falsity of the statement, but also that Bouzy *intended* to communicate the false implication. *See Kendall v. Daily News Publ'g*, 716 F.3d 82, 92 (3d Cir. 2013). This is because Bouzy could not

have been subjectively aware that an implication was false if he did not know he was communicating that implication in the first place.  *Id.*  Here, Plaintiff makes no effort to satisfy this standard on his implication claim.

Plaintiff thus fails to state a defamation claim over these tweets as well.

### D.     Plaintiff Fails To State A Claim As To The "Other" Statements.

Finally, Plaintiff lumps together three more tweets under the category of "[o]ther false and defamatory statements."  Compl. ¶ 107.  The only thing these tweets share in common, however, is that they are all nonactionable opinions.

In Tweet 16, Bouzy wrote, "Since NateTheLawyer, LawTube, and Caroline Orr Bueno started their coordinated smear campaign back in September, we have received more interest in our research, and there has been an increase in interview requests.  So I guess I should say thank you."  Compl. ¶ 107.[24]  Presumably Plaintiff objects to the term "smear campaign," but "[a]ny accusation that [he] and others engaged in a 'smear campaign' of anyone is a protected statement of opinion – not a provably false assertion of fact."  *Harvey v. CNN*, 520 F. Supp. 3d 693, 718 (D. Md. 2021), *aff'd in relevant part*, 48 F.4th 257 (4th Cir. 2022).

Moreover, even if it were a provably false statement of fact to assert that someone engaged in a "smear campaign," that assertion does not rise to the level of actionable defamation because such a statement "must do more than cause

---

[24] *See* https://twitter.com/cbouzy/status/1581047028565450752 (Ex. 16).

discomfort or affront" and instead must "attribute[] odious or despicable characterizations to its subject." *Chau*, 771 F.3d at 127; *see also Camassar v. Day Publ'g*, No. KNLCV136019301S, 2015 Conn. Super. LEXIS 2581, at *11 (Oct. 9, 2015) ("Courts have held that stronger language than 'shakedown' and 'smear campaign' were not defamatory."). And even if it were (a) a provably false statement of fact (b) rising to the level of being actionably defamatory, Plaintiff alleges no facts that, if proven, would show Bouzy published it with actual malice.

In Tweet 17, Bouzy wrote, "Professional liars like NateTheLawyer prey on people who lack critical thinking skills. First, he tells his followers I am broke, and then he tells followers I am being paid by a bunch of politicians and celebrities. Which one is it?" Compl. ¶ 107.[25] Because the rest of the tweet raises questions – which, as explained in Part II.A. are nonactionable – presumably Plaintiff objects to being described as a "professional liar." But, in this context, that is a nonactionable expression of opinion, including because it fully discloses the basis for that characterization. *Levin*, 119 F.3d at 197. Moreover, in this context the term "liar" is clearly an expression of Bouzy's personal opinion rather than an assertion of fact. *See Ram v. Moritt*, 612 N.Y.S.2d 671, 672 (App. Div. 1994) (where defendant called plaintiff, a doctor, a "'liar', a "cheat', and a 'debtor'

---

[25] *See* https://twitter.com/cbouzy/status/1582121496486772737 (Ex. 17).

in the presence of patients in the doctor's waiting room," the court's "review of the statements convinces us that they . . . constituted personal opinion and rhetorical hyperbole rather than objective fact, and thus were constitutionally protected"); *Faltas v. The State Newspaper*, 928 F. Supp. 637, 643, 646-47 (D.S.C. 1996) (statement that plaintiff "will lie to suit her agenda" and use "her status . . . as an opportunity to present lies as truth" was protected opinion), *aff'd*, 1998 U.S. App. LEXIS 16316 (4th Cir. 1998) (per curiam).

In Tweet 18, Bouzy wrote that Plaintiff "bragged to his @YouTube viewers about illegally obtaining my social security number, and then he showed the Venmo receipt as proof of who he paid."  Compl. ¶ 107.[26]  Though the Complaint omits the context, this tweet includes a screenshot of Plaintiff's video titled "Youtube Bouzy Lawsuit Update," highlighting the portion of the video transcript in which Plaintiff states that a "private investigator" he hired to investigate Bouzy provided him a "full report" that included Bouzy's "Social Security" number.  *Id.*[27] Plaintiff therefore cannot demonstrate that Tweet 18 is materially false, since it accurately reports Plaintiff's statements and attributes them to him.  *See Tannerite Sports*, 864 F.3d at 247.  And, once again, Plaintiff has failed to allege *any* facts to

---

[26] *See* https://twitter.com/cbouzy/status/1585293182245507072 (Ex. 18).

[27] *See* https://www.youtube.com/watch?v=hP1eh20phpE (Ex. 28) at 11:44-13:30.

demonstrate that Bouzy published this tweet with actual malice, since it is plainly based on a video of Plaintiff saying precisely what Bouzy says he said.

## III.   PLAINTIFF'S OTHER TORT CLAIMS ALSO FAIL AS A MATTER OF LAW.

Plaintiff's "tag-along" claims for false light invasion of privacy and intentional interference with prospective business advantage likewise fail as a matter of constitutional and state law.  As the Supreme Court has unanimously held, the First Amendment does not allow Plaintiff to circumvent the protections limiting defamation claims by pleading alternative claims.  *See Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988); *see also Food Lion v. Capital Cities/ABC*, 194 F.3d 505, 522 (4th Cir. 1999) (plaintiff may not "recover defamation-type damages" without satisfying "standards of a defamation claim").

Moreover, both claims separately and independently fail as matter of New York law.  "New York does not recognize a separate cause of action for false light/invasion of privacy."  *Henry v. Fox News Network*, 21-CV-7299 (RA), 2022 U.S. Dist. LEXIS 169928, at *29 (S.D.N.Y. Sept. 20, 2022) (dismissing same). And, a "claim for intentional interference with a prospective economic relationship where the injury flows entirely from harm to a plaintiff's business reputation is duplicative of a defamation claim, and is disallowed under New York law." *Huizenga v. NYP Holdings*, No. 17-CV-2113-LTS, 2019 U.S. Dist. LEXIS 65059, at *9-10 (S.D.N.Y. Apr. 16, 2019); *see also Krepps v. Reiner*, 588 F. Supp. 2d 471,

485 (S.D.N.Y. 2008) ("Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage"), *aff'd*, 377 F. App'x 65 (2d Cir. 2010).  The Court should therefore dismiss these claims as well.[28]

## IV.   THE DISMISSAL SHOULD BE WITH PREJUDICE.

Because no amount of re-pleading can transform a statement of opinion into a statement of fact, or convert a substantially true statement into a false one, amendment would be futile.  *See, e.g.*, *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted").  Likewise, in these circumstances, in which Bouzy's only arguably factual tweets are based on Plaintiff's own videotaped statements, no amount of re-pleading could plausibly allege actual malice.  *Id.*  For those reasons, dismissal should be entered with prejudice.  *Id.*

---

[28] Even putting aside that Plaintiff utterly fails to state a claim, his requests for injunctive relief are improper on their face.  "Equitable relief requires a showing that there is no adequate remedy at law," *SEG Sports Corp. v. State Athletic Comm'n*, 952 F. Supp. 202, 204 (S.D.N.Y. 1997), and "as a matter of law, money damages for defamation is an adequate remedy at law," *Palin v. New York Times Co.*, No. 17-cv-4853 (JSR), 2020 U.S. Dist. LEXIS 11544, at *4 (S.D.N.Y. Jan. 19, 2020) (citing *Ventura v. Kyle*, 825 F.3d 876, 887 (8th Cir. 2016)).  Also, even had Plaintiff stated a valid claim, an order *compelling* speech (in the form of a forced retraction or mandated corrective advertising) would violate the First Amendment.  *See, e.g.*, *Wooley v. Maynard*, 430 U.S. 70, 714 (1977) (First Amendment protects "both the right to speak freely and the right to refrain from speaking").

## CONCLUSION

For the reasons stated above, Bouzy respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.  As explained in note 12 *supra*, Bouzy reserves his right to seek attorneys' fees and costs following adjudication of this motion.

Dated:  January 9, 2023                     Respectfully submitted,

                                            BALLARD SPAHR LLP
                                            A Pennsylvania Limited Liability Partnership

Seth D. Berlin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)    By */s/ William P. Reiley*
1909 K Street NW, 12th Floor               William P. Reiley (128872014)
Washington, DC 20006                   700 East Gate Drive, Suite 330
Tel:  (202) 661-2200                   Mount Laurel, NJ 08054-00015
Fax:  (202) 661-2299                   Tel:  (856) 761-3465
berlins@ballardspahr.com               Fax: (856) 761-1020
mishkinm@ballardspahr.com              reileyw@ballardspahr.com

*Attorneys for Defendant Christopher Bouzy*