**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NATHANIEL J. BROUGHTY,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER E. BOUZY,<br><br>Defendant. | Case No. 2:22-cv-6458-SDW-AME |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

BALLARD SPAHR LLP

William P. Reiley (128872014)
700 East Gate Drive, Suite 330
Mount Laurel, NJ 08054-00015
Tel: (856) 761-3465
Fax: (856) 761-1020
reileyw@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Defendant Christopher E. Bouzy*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

I. PLAINTIFF HAS CONCEDED AT LEAST ONE OF BOUZY'S GROUNDS FOR DISMISSAL FOR EACH CHALLENGED TWEET ........ 1

II. IF REACHED, NEW YORK LAW APPLIES TO THE MERITS ........ 2

III. PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION ........ 7

A. The Tweets About Plaintiff's Credentials Are Not Actionable ........ 7

B. The Tweets Interpreting The "BS Statement" Are Not Actionable ........ 10

C. The Tweets About Fundraising Activities Are Not Actionable ........ 12

D. The Three "Other" Tweets Are Not Actionable ........ 13

IV. PLAINTIFF'S TAG-ALONG CLAIMS FAIL AS WELL ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp.*,
783 F.3d 1328 (D.C. Cir. 2015) ....................7

*Almog v. Israel Travel Advisory Service*,
298 N.J. Super. 145 (App. Div. 1997) ....................5

*Bose Corp. v. Consumers Union*,
466 U.S. 485 (1984) ....................9

*BYD Co. v. VICE Media*,
531 F. Supp. 3d 810 (S.D.N.Y. 2021) ....................10

*Celle v. Filipino Reporter Enterprises*,
209 F.3d 163 (2d Cir. 2000) ....................10

*Chapin v. Knight-Ridder, Inc.*,
993 F.2d 1087 (4th Cir. 1993) ....................7

*Cibenko v. Worth Publishers*,
510 F. Supp. 761 (D.N.J. 1981) ....................4, 14

*Clifford v. Trump*,
339 F. Supp. 3d 915 (C.D. Cal. 2018) ....................4

*Doe v. French*,
458 F. App'x 21 (2d Cir. 2012) ....................11

*Fairfax Fin. Holdings v. S.A.C. Cap. Mgmt.*,
450 N.J. Super. 1 (App. Div. 2017) ....................4, 5

*Ganske v. Mensch*,
480 F. Supp. 3d 542 (S.D.N.Y. 2020) ....................12

*Harte-Hanks Commc'ns v. Connaughton*,
491 U.S. 657 (1989) ....................11

*Hernon v. Webb-McRae*,
No. 1:16-cv-01612-NLH-AMD, 2018 WL 4204440
(D.N.J. Sept. 4, 2018) ....................................................................1

*Immuno AG. v. Moor-Jankowski*,
567 N.E.2d 1270 (N.Y. 1991)....................................................................6

*Kahl v. Bureau of Nat'l Affs.*,
856 F.3d 106 (D.C. Cir. 2017)....................................................................9

*Kendall v. Daily News Publ'g*,
716 F.3d 82 (3d Cir. 2013) ....................................................................13

*LoBiondo v. Schwartz*,
323 N.J. Super. 391 (App. Div. 1999) ....................................................................15

*Mallory v. S & S Publishers*,
260 F. Supp. 3d 453 (E.D. Pa. 2017)....................................................................12

*Mangan v. Corp. Synergies Grp.*,
834 F. Supp. 2d 199 (D.N.J. 2011)....................................................................8

*Marcone v. Penthouse Int'l Mag.*,
754 F.2d 1072 (3d Cir. 1985) ....................................................................9, 10

*Michel v. NYP Holdings*,
816 F.3d 686 (11th Cir. 2016) ....................................................................9

*Moe v. Seton Hall Univ.*,
No. 09-1424, 2010 WL 1609680 (D.N.J. Apr. 20, 2010) ....................................8

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964)....................................................................12

*Prager v. ABC*,
569 F. Supp. 1229 (D.N.J. 1983)....................................................................4, 5

*Printing Mart-Morristown v. Sharp Elecs. Corp.*,
116 N.J. 739 (1989) ....................................................................15

*Senna v. Florimont*,
196 N.J. 469 (2008) ....................................................................6

*St. Amant v. Thompson*,
390 U.S. 727 (1968)....................9

*Sys. Operations v. Sci. Games Dev. Corp.*,
555 F.2d 1131 (3d Cir. 1977) ....................3, 4

*Time, Inc. v. Pape*,
401 U.S. 279 (1971)....................11

**Statutes & Other Authorities**

Pressler & Verniero, *Current N.J. Court Rules*, R. 4:5-4 cmt. 6.3.1 ....................5

*Restatement (Second) of Conflict of Laws* § 150 ....................3, 5

*Restatement (Second) of Torts* § 580A ....................11

*Restatement (Second) of Torts* § 580B ....................8, 9

Plaintiff's Opposition ("Opp.") confirms that he cannot state a claim as a matter of law. He fails to address, and therefore concedes, *at least* one dispositive argument as to *each* of the twenty-two tweets at issue. And he advances clearly erroneous arguments on both choice of law and substantive tort law.

## I. PLAINTIFF HAS CONCEDED AT LEAST ONE OF BOUZY'S GROUNDS FOR DISMISSAL FOR EACH CHALLENGED TWEET.

**First**, Plaintiff does not address *any* of Bouzy's grounds for dismissal as to five of the challenged tweets – Nos. 1, 8, 16, 17, and 19 – and thereby concedes them entirely. *See Hernon v. Webb-McRae*, No. 1:16-cv-01612-NLH-AMD, 2018 WL 4204440, at *2 n.2 (D.N.J. Sept. 4, 2018) ("Plaintiff's failure to address Defendants' motion on several of his claims demonstrates that he has abandoned those claims, or concedes that they are unavailing.") (collecting cases).[1]

**Second**, for the clusters of Bouzy's tweets that (a) questioned whether Plaintiff was an attorney (Nos. 2-5) or (b) characterized a video of Plaintiff admitting that he "knew all the BS" and "tricks" that law enforcement uses because he had done "all that shit, too" (the "BS Statement") (Nos. 9-15), Plaintiff fails to address, and therefore concedes, Bouzy's showing that those tweets are nonactionable opinions based on fully disclosed facts. *Compare* Mem. at 23-24, 28-29 (advancing that argument), *with* Opp. at 26-31, 32-36 (failing to address it).

---

[1] For the Court's convenience, we are filing an updated copy of the chart attached to our initial brief highlighting tweets and arguments that Plaintiff fails to address.

**Third**, for the lone tweet (No. 6) in which Bouzy stated that Plaintiff "was never a prosecutor," Plaintiff does not address his failure to plead any facts that would, if proven, establish that Bouzy published it with actual malice. *Compare* Mem. at 26-27, *with* Opp. at 30-31. Plaintiff thus concedes that argument.

**Fourth**, for the tweets describing Plaintiff as a "grifter" (Nos. 7 and 20-22), Plaintiff remarkably never addresses Bouzy's showing that the tweets cannot be knowing falsehoods where *Plaintiff himself* used the term "grifting" to describe his own fundraising activities. *Compare* Mem. at 6, 31-32, *with* Opp. at 36-38.

**Fifth**, for Tweet No. 18, which stated that Plaintiff's investigator illegally obtained Bouzy's social security number, Plaintiff fails to address either falsity or knowledge of falsity of that conduct, even though that is what provides the tweet's defamatory gist or sting. *Compare* Mem. at 37-38, *with* Opp. at 33 n.16, 36 n.20.

Plaintiff has thus conceded his claims as to every tweet at issue, and on that basis the Court should grant Bouzy's motion to dismiss in full and with prejudice.

## II. IF REACHED, NEW YORK LAW APPLIES TO THE MERITS.

The parties agree that this Court applies New Jersey's choice-of-law rules and that New Jersey courts generally follow the *Restatement (Second) of Conflict of Laws* (the "*Restatement*"). Opp. at 14-15. Remarkably, though, Plaintiff's Opposition relies almost exclusively on general principles articulated in Sections 6 and 145, Opp. at 15-18, instead of Section 150, titled "Multistate Defamation."

While Plaintiff initially argues that Bouzy "published" his tweets in New Jersey, where he resides, and not in New York, Opp. at 14-15, Plaintiff ultimately concedes his claims involve an "aggregate communication (like posts on the internet)" and alleges "nationwide" injury – the precise circumstances governed by Section 150. Opp. at 18 (citing *Restatement* § 150(1)). Yet when Plaintiff finally addresses Section 150 in passing, Opp. at 18, he sidesteps its key provision.

Section 150(2) provides that, "[w]hen a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be *the state where the person was domiciled at the time*" (emphasis added). This is because defamation law is "designed to protect a person's interest in his reputation" and therefore courts typically apply "the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation," which will "usually be the state of the plaintiff's domicil[e]." *Restatement* § 150 cmt. e.; *see also Sys. Operations v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1138 (3d Cir. 1977) (Section 150(3), the analogue to Section 150(2) for corporations, includes a "clarification very pertinent to" which state has the "most significant relationship," namely, that it "will usually be the state where the corporation . . . had its principal place of business at the time"). Thus, Plaintiff's effort to invoke general choice-of-law principles, rather than engage with the specific provision governing multi-state defamation cases, falls flat.

Indeed, courts routinely apply the law of the plaintiff's domicile in cases where a defamatory statement is published nationally or worldwide. *See Sys. Operations*, 555 F.2d at 1139 (applying Section 150 to hold that "campaigns of disparagement of national scope directed to products of New Jersey-based corporations are judged by New Jersey law regardless of the publication of disparagement in other states"); *Prager v. ABC*, 569 F. Supp. 1229, 1232 (D.N.J. 1983) ("since [plaintiff] is an individual, a natural person . . . the law of the State of his domicile controls his claim"), *aff'd without op.*, 734 F.2d 7 (3d Cir. 1984); *Cibenko v. Worth Publishers*, 510 F. Supp. 761, 766 (D.N.J. 1981) ("the law of plaintiff's domicile will apply in libel and privacy actions if publication occurred there"); *Fairfax Fin. Holdings v. S.A.C. Cap. Mgmt.*, 450 N.J. Super. 1, 54 (App. Div. 2017) ("when a corporation claims multistate defamation, the state with the most significant relationship to the matter 'will usually be the state where the corporation . . . had its principal place of business' . . . because it is assumed that a corporation sustains its greatest injury from defamation there") (quoting Section 150(3)); *Clifford v. Trump*, 339 F. Supp. 3d 915, 918-21 (C.D. Cal. 2018) (applying law of plaintiff's domicile (Texas) in defamation case arising out of defendant's tweets and dismissing claim), *aff'd*, 818 F. App'x 746 (9th Cir. 2020).[2]

---

[2] Plaintiff compounds his error by mischaracterizing these decisions. He wrongly asserts, for example, that in *Prager* "the plaintiff's domicile was New York," Opp. at 20 n.4, but the decision confirms that plaintiff Prager lived and worked at a

Plaintiff's only answer to this substantial body of law applying Section 150 is to invoke *Almog v. Israel Travel Advisory Service*, 298 N.J. Super. 145 (App. Div. 1997), which does not even mention Section 150. Opp. at 18-19. Putting aside that (a) *Almog* involved letters rather than a mass-media publication and (b) was subsequently distinguished by *Fairfax*, 450 N.J. Super. at 49-50, which as explained above *requires* the Court to apply Section 150 in multi-state defamation cases, *see* note 1 *supra*, it would not help Plaintiff. He claims Judge Pressler's treatise supports his view simply because it cites *Almog*, Opp. at 19, but the treatise makes clear that "[t]he most significant relationship test" applies, Pressler & Verniero, *Current N.J. Court Rules*, R. 4:5-4 cmt. 6.3.1 (2023), and Section 150(2) confirms that, in a multi-state defamation claim, the state with the "most significant relationship" is, in virtually every case, the state of plaintiff's domicile.

Even on its own terms, *Almog*'s interest-balancing approach would compel applying New York law here given the state's paramount "governmental policies" protecting speech, including about its citizens. 298 N.J. Super. at 158. These

"Livingston address." 569 F. Supp. at 1234. The Court applied the law of Prager's domicile even though, as Plaintiff concedes, the allegedly "defamatory content was broadcasted **from** New York." Opp. at 20 n.4. And, although Plaintiff contends the court in *Fairfax* focused on *Restatement* Sections 6 and 145, *id.*, it did so for *other* claims (like RICO), while, on the defamation-adjacent claim for injurious falsehood, the court held it "must consider" Section 150. 450 N.J. Super. at 53-54; *see also* Opp. at 20 n.4 (conceding *Fairfax* "applied New York law because it was . . . where the plaintiff's reputation was most damaged").

include, for example, (1) New York's robust protection for expressions of opinion, Mem. at 11; (2) its rejection of the false light tort, *id.* at 38; and (3) fee-shifting for defendants who prevail in meritless defamation actions arising out of speech on issues of public concern, *id.* at 19 n.12. These aspects of New York law all reflect the state's "exceptional history and rich tradition" of advancing free expression by protecting speech from tort liability, including speech about New York residents. *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1278 (N.Y. 1991).[3]

Thus, New York law applies here unless "some other state has a more significant relationship to the occurrence and the parties." Section 150 cmt. b. Even Plaintiff's own analysis of Section 145's general factors shows that is not the case. Opp. at 17-18 (under four-factor test, one factor favors New York, one favors New Jersey, and the remaining two are neutral). Thus, along with federal constitutional principles, the substantive law of New York governs this action.

---

[3] While there are some important differences between New York and New Jersey defamation law, Plaintiff recognizes they are "substantially similar" in a number of respects. Opp. at 22 n.2. But his recitation of similarities and differences is flawed. First, he suggests that only New York requires him to show actual malice. *Id.* at 13. Setting aside that Plaintiff trumpets the fact that he is a public figure, *id.* at 4, and appears to concede as a result that he is required to plead and ultimately prove actual malice as a matter of federal *constitutional* law, *id.* at 25, New Jersey law, like New York's, requires Plaintiff to plead and prove actual malice because the speech at issue "involves a matter of public concern." *Senna v. Florimont*, 196 N.J. 469, 496-97 (2008). Second, Plaintiff contends that Bouzy relies on New York law to impose a "heightened pleading standard." Opp. at 13-14. But his motion does no such thing: it simply invokes the ordinary standard under Rule 12(b)(6) for failure to state a claim. Mem. at 8-9; *see also id.* at 19 n.12.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION.

Plaintiff concedes that he must show that each challenged tweet was (a) a statement of fact, not opinion, (b) false, and (c) made with actual malice. Opp. at 21, 22 n.6. Remarkably, he argues at length that the tweets are defamatory or defamation *per se*, aspects of the tort Bouzy did not challenge. *Id.* at 21, 22 n.6, 26, 32-33, 36-37. He fares no better in responding to Bouzy's actual arguments.

### A. The Tweets About Plaintiff's Credentials Are Not Actionable.

**Falsity:** Plaintiff admits it was true for Bouzy to state, in Tweet Nos. 2-5, that he "could not find Mr. Broughty in the attorney database" under the name "Broady." Opp. at 28 (such "an argument of substantial truth might hold some water"). Instead, Plaintiff claims that it was false to say that he was "never a prosecutor," *id.* at 27, but Bouzy did not argue otherwise, raising only "actual malice" with respect to that tweet, Mem. at 26-27 & App'x at 2; *see* pp. 9-10 *infra*.

**Raising Questions:** Plaintiff argues in a footnote that "a 'question can conceivably be defamatory'" if it can "'be reasonably read as an *assertion* of a false *fact*.'" Opp. at 24 n.8 (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993)). But under the *holdings* of *Chapin* and the numerous other cases he cites on this point, *id.*, "it is generally settled" that questions indicate a "lack of definitive knowledge about the issue," *Abbas v. Foreign Policy Grp.*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (Kavanaugh, J.), and therefore fail to support a

claim. Plaintiff never explains how Bouzy's questions – which plainly evince a lack of knowledge and which he removed and corrected upon learning the answers – are actionable.

**Opinion:** As noted above, Plaintiff fails to address Bouzy's argument that, to the extent these tweets *imply* that he "was lying about his credentials," the tweets are protected opinions based on *disclosed* facts because they provide readers with the basis for that conclusion. Mem. at 23-24; *see also id.* at 32-35 (detailing heightened requirements for defamation-by-implication claims). Instead, Plaintiff advances inapposite arguments about so-called "mixed" opinions where, unlike here, a speaker suggests he has inside knowledge of *undisclosed* facts, such as a CEO accusing a predecessor of "financial improprieties" or a school stating a student was "expelled for academic cause." Opp. at 22-24 & n.7, 28 (discussing *Mangan v. Corp. Synergies Grp.*, 834 F. Supp. 2d 199, 202 (D.N.J. 2011); *Moe v. Seton Hall Univ.*, No. 09-1424, 2010 WL 1609680, at *8 (D.N.J. Apr. 20, 2010)).

**Actual Malice:** Plaintiff's central argument is that "Bouzy's haphazard 'investigation'" into Plaintiff's credentials "was not reasonable," and that Bouzy "should have" made "a minimal attempt to satisfy himself as to the truth before tweeting the results of his supposed research." Opp. at 30-31; *see also id.* at 2 (accusing Bouzy of "negligence" and "incompetence"); *id.* at 31 (erroneously invoking private figure/negligence standard from *Restatement (Second) of Torts*

§ 580B). Actual malice turns on a speaker's *subjective* awareness of a statement's falsity, not whether *objectively* "a reasonably prudent man would have published" the statement "or would have investigated" further before publishing it. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Plaintiff's argument that Bouzy should have done more than query the name "Broady" in New York State's database of licensed attorneys therefore fails as a matter of settled defamation law.[4]

Next, Plaintiff argues the exact opposite: that Bouzy actually did know the truth but concealed it. Opp. at 30 (claiming Bouzy admitted "to already having Mr. Broughty's information"); *id.* at 8 (same). But Bouzy's tweet that he delayed *revealing* Plaintiff's name does not mean he *knew* it all along, particularly given his prior tweets screenshotting searches for "Nate Broady." Indeed, statements wondering if that was his true name, Opp. at 29-30, and offering "perspectives contrary to the publisher's own . . . help[ ] to rebut, not establish, the presence of actual malice." *Michel v. NYP Holdings*, 816 F.3d 686, 703 (11th Cir. 2016).

At bottom, the statements that Plaintiff was not a lawyer – or, as in Tweet No. 6, a prosecutor – were at most mistakes, not knowing falsehoods. *See, e.g.*, *Marcone v. Penthouse Int'l Mag.*, 754 F.2d 1072, 1091 (3d Cir. 1985) ("mistakes

[4] Plaintiff likewise errs in suggesting that actual malice does not require knowledge of falsity *at the time of publication*. Opp. at 25 n.9 (mischaracterizing *Bose Corp. v. Consumers Union*, 466 U.S. 485, 512 (1984)); *see also Kahl v. Bureau of Nat'l Affs.*, 856 F.3d 106, 118 (D.C. Cir. 2017) (Kavanaugh, J.) ("The actual malice inquiry focuses on the defendant's state of mind at the time of publication.").

[that] appear to be the result of insufficient . . . verification" are not actual malice, even if defendant "was arguably negligent").[5] To survive dismissal, Plaintiff was obliged to plead facts that, if proven, would constitute clear and convincing evidence that, when Bouzy published these tweets, he *knew* that Plaintiff was an attorney or a prosecutor. Plaintiff has not alleged any such facts. *See BYD Co. v. VICE Media*, 531 F. Supp. 3d 810, 823 (S.D.N.Y. 2021) (dismissing complaint where, as here, plaintiff "alleges no nonconclusory facts that support the proposition that [defendant] knew that it was reporting falsities," and, contrary to Plaintiff's description, Opp. at 31 n.13, "none of the objective facts alleged . . . plausibly support[s] a reasonable inference" of actual malice), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022), *cert. denied*, 143 S. Ct. 103 (2022).

**B. The Tweets Interpreting The "BS Statement" Are Not Actionable.**

Plaintiff similarly fails to grapple with Bouzy's arguments as to Tweet Nos. 9-15, in which Bouzy interprets the "BS Statement" as Plaintiff's admission that he planted evidence on suspects when he previously served as a police officer.

**Opinion:** As noted above, Plaintiff simply fails to respond to, and has thus conceded, Bouzy's argument that he was conveying his interpretation of the BS

---

[5] Plaintiff objects, Opp. at 26 n.10, to our citation of substantially similar language in *Celle v. Filipino Reporter Enterprises*, 209 F.3d 163 (2d Cir. 2000), without noting it was in dissent. While we apologize for the oversight, there can be no serious dispute, as illustrated by cases like *Marcone*, that the passage we quoted accurately states the actual malice doctrine.

Statement. Opp. at 32-33 (asserting that these tweets are "false and defamatory" but not addressing the argument that they are opinions based on disclosed facts).[6]

**Actual Malice:** Even if Bouzy's interpretation of the BS Statement "arguably reflect[ed] a misconception," that cannot rise to the level of a knowing or calculated falsehood, *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971), particularly given Plaintiff's own description of the statement as "clunky" and not sufficiently "clear." Mem. at 29-30. Plaintiff's response is to double down on his claim that he *created* actual malice when he "unconditionally denied planting or fabricating any evidence," after which Bouzy supposedly "knew" that "statements to the contrary were false." Opp. at 33-36. Plaintiff cites *Restatement (Second) of Torts* § 580A cmt. d (1977), to suggest that his disavowal establishes actual malice, Opp. at 25, but later, binding case law clearly holds otherwise: denials – "however vehement" – do not establish actual malice. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 691 n.37 (1989); Mem. at 30-31 (collecting cases).

In a footnote, Plaintiff posits that this line of authority only applies where a "reporter had other sources," not where, as here, Bouzy was merely interpreting Plaintiff's own statement. Opp. at 35 n.19. But Plaintiff cites *no* authority for that

---

[6] Plaintiff also willfully misreads Tweet 13 as accusing him of planting evidence while in his "early 20s," *before* he was a police officer. Opp. at 11. But that makes no sense. Bouzy is plainly addressing Plaintiff's *law enforcement* conduct, even if he has Plaintiff's precise age wrong. *See Doe v. French*, 458 F. App'x 21, 23 (2d Cir. 2012) (to protect speech, courts must avoid "hypertechnical parsing").

dubious proposition, which would effectively allow public figures to veto speech characterizing the import of their public statements. Such a rule would undermine "the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

### C. The Tweets About Fundraising Activities Are Not Actionable.

**Adopting Plaintiff's Own Characterization:** Plaintiff ignores, and therefore concedes, Bouzy's argument with respect to Tweet Nos. 7 and 20-22 (he nowhere addresses No. 19, *see* Part I *supra*), that it cannot possibly amount to a knowing falsehood for Bouzy to describe Plaintiff as a "grifter" when Plaintiff describes his own fundraising activities as "grifting." Mem. at 6, 31-32; *see also Mallory v. S & S Publishers*, 260 F. Supp. 3d 453, 461 (E.D. Pa. 2017) (plaintiff cannot state a defamation claim over a passage in a biography that uses a phrase drawn "from [her] own memoir"), *aff'd*, 728 F. App'x 132 (3d Cir. 2018).

**Opinion:** Plaintiff objects, Opp. at 37 n.22, that "the term 'grifter' is nowhere to be found" in *Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020), even though the court ruled that other terms *akin to* "grifter" and "sucker" are nonactionable because they are not "capable of being proven true or false." Mem. at 33. Plaintiff also does not address Bouzy's argument that it is "clearly a nonactionable expression of opinion" to describe his donors as "a bunch of gullible suckers." *Id.* (describing Tweet 20). Thus, he has conceded the point.

**Actual Malice:** Plaintiff fails to explain how it was knowingly false for Bouzy to observe that Plaintiff's fundraising efforts for this lawsuit "take money from people and make himself and [his attorney] richer." *Id.* at 32-33 (describing Tweet No. 22). Plaintiff *has* taken money from donors to fund this lawsuit, and those donations *have* made him and his counsel richer as the donated funds by definition relieve Plaintiff of having to spend his own money on this action.[7]

To the extent Plaintiff is arguing that Tweet No. 22 *implied* improper conduct on his part, Bouzy has already explained that Plaintiff must plead (and ultimately prove) not only that Bouzy was subjectively aware of the probable falsity of the statement, but also that Bouzy *intended* to communicate such a false implication. Mem. at 34-35 (citing *Kendall v. Daily News Publ'g*, 716 F.3d 82, 92 (3d Cir. 2013)). Plaintiff does not address, and therefore concedes, that (a) this rigorous standard applies to libel-by-implication claims by public figures and (b) he has made "no effort to satisfy this standard on [this] claim." *Id.* at 35.

**D. The Three "Other" Tweets Are Not Actionable.**

As noted above, Plaintiff's Opposition does not even mention Tweet Nos. 16 or 17. He also fails to address Bouzy's arguments regarding Tweet No. 18, in which Bouzy said that Plaintiff "bragged" on YouTube "about illegally obtaining

---

[7] Indeed, in the days since Plaintiff filed his Opposition, he has launched *another* online fundraiser and received approximately $38,000 in donations as of this filing. *See* https://www.gofundme.com/f/vu2ta-defamation-lawsuit-vs-bot-sentinel.

my social security number." Mem. at 37-38. Setting aside that Plaintiff responds only in passing in a footnote, Plaintiff asserts that this statement is knowingly false because "at no time does [Plaintiff] say he '**illegally**' obtained Bouzy's social security number." Opp. at 36 n.20. But actual malice turns on what a defendant *believed* about the *conduct* that created the defamatory gist or sting (here, that Plaintiff's investigator obtained his social security number and that it was illegal to do so), not what a plaintiff *said* about that conduct. Plaintiff does not allege any facts that Bouzy was subjectively aware that it was false to assert that Plaintiff's private investigator obtained Bouzy's social security number without his consent, or that doing so was illegal, so this claim fails as a matter of law. Mem. at 37-38.

## IV. PLAINTIFF'S TAG-ALONG CLAIMS FAIL AS WELL.

**No End Run:** Plaintiff does not dispute that, regardless of which state law governs, under the First Amendment he cannot circumvent the constitutional protections for defamation claims by asserting other torts. *Compare* Mem. at 38, *with* Opp. at 38-40. Accordingly, he has conceded this point, and those claims fail.

**False Light:** While Plaintiff quibbles over whether New York effectively allows false light claims in the guise of claims for defamation-by-implication, Opp. at 39 & n.23, it is inarguable that New York does not recognize a stand-alone false light tort. In any event, New Jersey law would preclude a false light claim arising out of speech that is not actionable in defamation. *Cibenko*, 510 F. Supp. at 767.

**Intentional Interference:** Plaintiff does not dispute that New York law precludes this claim in these circumstances. *Compare* Mem. at 38-39, *with* Opp. at 40. And even if New Jersey law applied, because Plaintiff's defamation claim fails, his interference claim fails as well. "It would obviously be intolerably anomalous and illogical for conduct that is held not to constitute actionable defamation nevertheless to be relied on to sustain a different cause of action based solely on the consequences of that alleged defamation." *LoBiondo v. Schwartz*, 323 N.J. Super. 391, 417 (App. Div. 1999). Moreover, Plaintiff fails to "allege facts leading to the conclusion that the [alleged] interference caused the loss of [a] prospective gain." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751 (1989). He identifies no such loss, Compl. ¶ 129, and in fact conceded that he is making money ("Bouzy Bucks") off of Bouzy's statements. Mem. at 6 & n.8.[8]

## CONCLUSION

For the reasons above and in his initial brief, Bouzy respectfully requests that the Court grant his motion and dismiss Plaintiff's Complaint. Because the speech at issue is nonactionable as a matter of law under multiple doctrines, amendment would be futile, and the Complaint should be dismissed with prejudice.

---

[8] *See also* https://rumble.com/v1qjuo5-viewers-discretion-joined-by-nate-the-lawyer-and-ron-coleman-who-are-grabbi.html at 2:31:40-2:36:25 (Plaintiff's counsel's remarkable admission that any purported intentional interference, "as of the time I filed [that claim], has not happened").

Dated: February 21, 2023

Respectfully submitted,

BALLARD SPAHR LLP
A Pennsylvania Limited Liability Partnership

By */s/ William P. Reiley*
William P. Reiley (128872014)

Seth D. Berlin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

700 East Gate Drive, Suite 330
Mount Laurel, NJ 08054-00015
Tel: (856) 761-3465
Fax: (856) 761-1020
reileyw@ballardspahr.com

*Attorneys for Defendant Christopher Bouzy*