## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NATHANIEL J. BROUGHTY,

        Plaintiff,

v.

CHRISTOPHER E. BOUZY,

        Defendant.

Case No. 2:22-cv-6458-SDW-AME

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

BALLARD SPAHR LLP

William P. Reiley (128872014)
700 East Gate Drive, Suite 330
Mount Laurel, NJ 08054-00015
Tel:  (856) 761-3465
Fax: (856) 761-1020
reileyw@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel:  (202) 661-2200
Fax:  (202) 661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Defendant Christopher E. Bouzy*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 3

      A.     Bot Sentinel's YouTube Report ............................................ 4

      B.     Bouzy Tweets About Plaintiff ............................................. 5

      C.     The Initial Complaint And Motion To Dismiss .................... 7

      D.     The Court's Opinion And Order ........................................ 8

      E.     Plaintiff's First Amended Complaint ................................. 11

ARGUMENT ..................................................................................... 13

I.     PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION ............. 14

      A.     Plaintiff Has Improperly Re-Pled Statements That The
             Court Already Dismissed With Prejudice As Nonactionable
             Opinions .......................................................................... 14

      B.     Plaintiff Fails To State A Claim As To The <u>Only</u> Tweet The
             Court Concluded Could Reasonably Be Read As A
             Statement Of Fact ............................................................ 17

      C.     Plaintiff Fails To State A Claim Over "New" Tweets About
             His Litigation Fundraising ................................................ 19

      D.     Plaintiff Further Fails To State A Claim For Defamation
             *Per Quod* Because He Does Not Allege Special Damages ............... 27

II.    THE COURT SHOULD DISMISS THE CASE WITH
      PREJUDICE ...................................................................... 29

CONCLUSION .................................................................................. 29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group*,
  783 F.3d 1328 (D.C. Cir. 2015)........................................................21

*Agnant v. Shakur*,
  30 F. Supp. 2d 420 (S.D.N.Y. 1998) .........................................27, 28

*Baker v. Latham Sparrowbush Associates*,
  808 F. Supp. 992 (S.D.N.Y. 1992) ...................................................16

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ..............................................................18

*Biro v. Condé Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) ..................................20, 22, 25

*Blankenship v. NBCUniversal, LLC*,
  No. 22-1125, 2023 WL 6558383 (U.S. Oct. 10, 2023) .......................8

*In re Burlington Coat Factory Securities Litigation*,
  114 F.3d 1410 (3d Cir. 1997) ..............................................................4

*BYD Co. v. VICE Media*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021) ...............................................18

*Chaiken v. VV Publishing Corp.*,
  907 F. Supp. 689 (S.D.N.Y. 1995) ....................................................22

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ..............................................21, 22, 25

*Gadsden v. Jersey City Education Association*,
  2008 WL 8920212 (D.N.J. July 2, 2008) ..........................................16

*Ganske v. Mensch*,
  480 F. Supp. 3d 542 (S.D.N.Y. 2020) .................................................4

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)..............................................................................18

*Kahl v. Bureau of National Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017)............................................................................14

*Kendall v. Daily News Publishing Co.*,
  716 F.3d 82 (3d Cir. 2013) ..........................................................................26, 27

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1997) .............................................................................24

*Mayfield v. NASCAR, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ............................................................................18

*McCafferty v. Newsweek Media Group*,
  955 F.3d 352 (3d Cir. 2020) ........................................................................14, 18

*Michel v. NYP Holdings*,
  816 F.3d 686 (11th Circ. 2016) ........................................................................18

*Nelson Auto Center v. Multimedia Holdings Corp.*,
  951 F.3d 952 (8th Cir. 2020) ............................................................................18

*Pace v. Baker-White*,
  850 F. App'x 827 (3d Cir. 2021) ......................................................................14

*Palin v. New York Times Co.*,
  510 F. Supp. 3d 21 (S.D.N.Y. 2020) ..................................................................8

*Palin v. New York Times Co.*,
  No. 17-cv-4853 (JSR), 2020 WL 353455 (S.D.N.Y. Jan. 19, 2020) .................28

*Philadelphia Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986)..........................................................................................16

*Pippen v. NBCUniversal Media*,
  734 F.3d 610 (7th Cir. 2013) ............................................................................18

*Ryniewicz v. Clarivate Analytics*,
  803 F. App'x 858 (6th Cir. 2020) ......................................................................18

*Schatz v. Republican State Leadership Committee*,
  669 F.3d 50 (1st Cir. 2012)...............................................................................18

*SEG Sports Corp. v. State Athletic Commission*,
   952 F. Supp. 202 (S.D.N.Y. 1997) ....................................................................28

*Shane v. Fauver*,
   213 F.3d 113 (3d Cir. 2000) .................................................................................29

*Stepanov v. Dow Jones & Co.*,
   120 A.D.3d 28 (N.Y. App. Div. 1st Dep't 2014) .........................................21, 24

*Tah v. Global Witness Publishing*,
   991 F.3d 231 (D.C. Cir. 2021) .............................................................................18

*Turner v. Wells*,
   879 F.3d 1254 (11th Cir. 2018) ...........................................................................18

*Walker v. Beaumont Independent School District*,
   938 F.3d 724 (5th Cir. 2019) ...............................................................................18

*Wooley v. Maynard*,
   430 U.S. 70 (1977).................................................................................................28

*Yeager v. NPR*,
   773 F. App'x 1030 (10th Cir. 2019)....................................................................18

*Zimmerman v. Buttigieg*,
   576 F. Supp. 3d 1082 (M.D. Fla. 2021).............................................................25

## Other Authorities

2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017)..............................13

## PRELIMINARY STATEMENT

This Court previously dismissed Plaintiff Nathaniel Broughty's sprawling initial Complaint in its entirety.  In so doing, the Court ruled that he had not, as required under both the First Amendment and New York law, "sufficiently alleged that Defendant made any false statement of fact," much less "with knowledge that it was false or with a reckless disregard for the truth."  Aug. 7, 2023 Opinion ("Op.") at 11 (ECF 14).  The Court dismissed the lion's share of the Complaint *with prejudice*, finding "statements which are nonactionable opinions" are "protected First Amendment speech," and ruling that all but one of the challenged tweets enjoyed that absolute protection.  *Id.* at 12, 16.  The Court then dismissed the one remaining statement – about whether Plaintiff had been a prosecutor – because he had not alleged facts that, if proven, would constitute clear and convincing evidence of actual malice.  *Id.* at 14.  Finally, the Court dismissed Plaintiff's false light and tortious interference claims under New York law, in the process rejecting his attempt to argue "defamation by implication" as an alternative to false light.  *Id.* at 8.

Despite that ruling, Plaintiff has now filed a First Amended Complaint (the "FAC") that (a) reasserts claims based on nine previously-challenged tweets that the Court already ruled were absolutely protected expressions of opinion and dismissed with prejudice, (b) fails to plead facts that would, if proven, establish

1

actual malice with respect to the "prosecutor" statement, (c) challenges ten *new* statements calling Plaintiff a "fraud" or questioning his use of funds raised from supporters, even though these newly challenged statements are legally indistinguishable from those the Court already ruled were protected opinions and dismissed with prejudice, and (d) again attempts to allege a "defamation by implication" claim, nonsensically labelling it as "defamation *per se* by implication."  As such, Plaintiff has both far exceeded the narrow leave to amend afforded him by the Court *and* has failed to do the one thing the Court allowed him to do: to plead facts that would establish actual malice for the "prosecutor" statement.

Perhaps the biggest change between Plaintiff's original Complaint and his Amended Complaint is in his description of Defendant Christopher Bouzy.  In the original lawsuit, Plaintiff characterized Bouzy as a "swindler" who would "employ catchphrases, techno-gobbledygook, sleight-of-hand, and a healthy dose of crowdfunding to throw up a cyber-smokescreen festooned with enough bells and whistles to enchant the untechnical and uncurious."  Compl. ¶¶ 3, 54 (ECF 1).  But what a difference an amendment makes.  Now Plaintiff has pivoted completely, acknowledging that Bouzy "is perceived as one of the foremost experts in the field of researching and identifying false and inaccurate information online," and that his work has been cited by "some of the most prominent academic institutions in

the world." FAC ¶¶ 2, 22-26. Although far from clear, Plaintiff now seems to be portraying Bouzy as an authoritative source to bolster his contentions of actual malice, in effect arguing someone with his research skills should have known that what he was publishing was false. But "should have known" reflects an objective standard of negligence, not the subjective awareness of probable falsity required to state a defamation claim. Indeed, despite the Court's invitation for Plaintiff to plead additional facts specifically alleging that Bouzy was subjectively aware that the "prosecutor" statement was probably false yet published it anyway, Plaintiff barely even mentions that tweet in his amended pleading.

Because Plaintiff has improperly littered his Amended Complaint with statements that were already dismissed with prejudice as protected expressions of opinion, has pled new analogous statements that are equally immune under that same protection, and has failed to adequately address the actual malice pleading deficiency for the "prosecutor" statement, he has failed to state a viable claim. His Amended Complaint should now be dismissed in its entirety and with prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Because the Court is already familiar with this matter from its prior ruling and Bouzy's Memorandum of Law in Support of his prior Motion to Dismiss (ECF 10-2), the following section offers a more condensed statement of the factual background and procedural history relevant to adjudicating this motion.

### A.    Bot Sentinel's YouTube Report

Bouzy is the founder of Bot Sentinel, a platform aimed at "identifying and monitoring fake accounts, toxic trolls, and countering false and inaccurate information online intended to mislead the public on Twitter."  FAC ¶ 17.[1]  Bot Sentinel's work has been widely reported on, and – as Plaintiff now acknowledges – Bouzy is recognized as an authoritative voice on this subject.  *Id.* ¶¶ 22-26.

On September 13, 2022, Bot Sentinel published a report titled *YouTube Policy Violations* (the "YouTube Report").  *See id.* ¶¶ 31-32.[2]  After examining "29 YouTube channels and analyz[ing] over 35,000 transcripts," Bot Sentinel found that each of those channels "contained multiple policy violations," such as "threats of violence, racism, [and] transphobia."  YouTube Report at 3.

One such channel belonged to an affiliate of "LawTube," which Plaintiff describes as an "informal group of seasoned lawyers with law-oriented YouTube

---

[1] During this lawsuit, Twitter changed its name to "X," *see* FAC ¶ 13, and it no longer refers to such postings as "tweets."  For the sake of consistency with the parties' prior briefing and this Court's ruling, however, Bouzy will continue to refer to the social media service as Twitter and the posts on that service as tweets.

[2] The YouTube Report is available at https://botsentinel.com/reports/documents/youtube/report-09-13-22.pdf.  The Court may consider the report, the parties' tweets, and the videos they reference in ruling on this motion without converting it into a summary judgment motion because they are "integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), and "necessary to place [challenged] comments in context," *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545-46 (S.D.N.Y. 2020), as required.

channels" who "livestream legal commentary and discussions, often featuring on one channel as a group."  FAC ¶ 10.  These "LawTubers" saw the YouTube Report as an attack on them.  *Id.* ¶ 32.  Plaintiff, a LawTube member, joined in their criticism on September 15, 2022, when he posted a tweet asserting that "Bot Sentinel is a paid propaganda firm," and two days later when Plaintiff and another member of the LawTube community published a video criticizing Bouzy and Bot Sentinel for the YouTube Report.[3]

## B.    Bouzy Tweets About Plaintiff

In response to Plaintiff's tweet and video, Bouzy published several tweets questioning whether Plaintiff "is a legit lawyer or just a social media lawyer," after being unable to find proof that Plaintiff was a licensed attorney.  FAC ¶ 41.  Upon learning that Plaintiff's real last name is "Broughty," not "Broady," however, Bouzy tweeted that Plaintiff is indeed a licensed attorney and deleted the earlier tweets.  FAC ¶ 39.  Bouzy, a non-lawyer, also erroneously asserted that Plaintiff "was never a prosecutor" based on a mistaken understanding of a New York State

---

[3] *See* https://twitter.com/NatetheLawyer/status/1570529174519160832 (previously filed as Ex. 29 to the [First] Certification of William P. Reiley (ECF 10-4) (hereafter, "Ex. __"); https://www.youtube.com/watch?v=9k3rds5Htc0 (Ex. 23). Because the Court dismissed all but one of the previously-challenged tweets with prejudice, we have not resubmitted copies of them with the Second Certification of William P. Reiley that accompanies this motion.  However, we include hyperlinks to those tweets and identify them by their prior exhibit numbers.

Unified Court System's Attorney Online Services Search result page, and again he deleted this tweet upon learning that it was in error.  *Id.* ¶ 60; Op. at 13-14.

Bouzy's examination of Plaintiff continued when he published an excerpt of a December 2020 LawTube video in which Plaintiff discussed his transition from police officer to prosecutor.  FAC ¶ 63.[4]  In particular, Bouzy criticized Plaintiff for a statement he made in that video, which Bouzy took as an admission that while serving in law enforcement Plaintiff had planted evidence on suspects, so that, after becoming a prosecutor, he knew that police officers who denied doing so were "'bullshitting'" him (the "BS Statement").  *Id.*

Plaintiff published a video responding to Bouzy's criticism, in which Plaintiff admitted that the BS Statement was "clunky" and that he "should have been more clear when [he] said it."  Ex. 25 at 10:00 - 19:05.[5]  In the same video, Plaintiff agreed that raising donations from LawTube supporters in response to Bouzy was a "good grift."  *Id.* at 6:51 - 7:10.  As a result, Plaintiff explained, it would be difficult to bring a defamation claim because he "can't say" Bouzy's tweets "hurt [him] financially."  *Id.* at 1:02:45 - 1:03:19; *see also id.* (admitting they were "actually helping" him).

---

[4] *See* https://twitter.com/cbouzy/status/1572212550762369026 (Ex. 9).

[5] *See* https://www.youtube.com/watch?v=_IPC0a2YKz8 (Ex. 25).

Finally, in the same video, Plaintiff laid out his "plan" to send Bouzy a cease-and-desist letter and to "pray that he doesn't stop," so Plaintiff could then "file a defamation lawsuit." *Id.* at 50:20-39. Plaintiff's counsel sent such a cease-and-desist letter to Bouzy on September 21, 2022. FAC ¶ 66. Rather than allowing that demand to silence him, however, Bouzy posted additional tweets, criticizing Plaintiff's fundraising to pursue his threatened lawsuit. *Id.* ¶ 67.[6]

### C.    The Initial Complaint And Motion To Dismiss

Plaintiff filed his initial Complaint in October 2022 in New Jersey Superior Court, asserting claims against Bouzy for defamation *per quod*, defamation *per se*, false light invasion of privacy, and intentional interference with prospective business advantage. *See* Notice of Removal (ECF No. 1) at 36-38. Broadly speaking, the Complaint challenged four categories of Bouzy's tweets: (1) tweets questioning whether Plaintiff was an attorney and former prosecutor, (2) tweets criticizing Plaintiff over the BS Statement; (3) tweets characterizing Plaintiff as a "grifter"; and (4) three "other" tweets. *See generally id.*

In November 2022, Bouzy removed the action to this Court. *See id.* In January 2023, Bouzy moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (ECF 10).

---

[6] *See* https://twitter.com/cbouzy/status/1581291484867100672 (Ex. 15).

**D.      The Court's Opinion And Order**

In August 2023, this Court issued an Opinion (ECF 14) and Order (ECF 15) granting the motion to dismiss in full.  As a threshold matter, the Court determined that New York law governs this action, Op. at 7-8, that Plaintiff's claims could be based only on statements of fact, not opinions, *id.* at 9, and that, for any factual statements, Plaintiff "is required to show actual malice because he is a limited-purpose public figure," *id.* at 11.[7]  The Court then concluded that Plaintiff failed to state a claim for multiple reasons.

**First**, Bouzy's "tweets questioning whether Plaintiff was a lawyer are protected First Amendment speech because a reasonable reader would only view them as opinions, and the facts upon which they were based were disclosed."  Op. at 12.  The Court found significant that the statements at issue were posted on

---

[7] While the Court correctly concluded that Plaintiff is a limited-purpose public figure as a matter of federal constitutional law, we respectfully request the Court to hold that Plaintiff is also required to demonstrate actual malice pursuant to N.Y. Civ. Rights Law § 76-a, which is a "substantive" provision of New York law requiring even private figures to show actual malice in all cases involving speech on a matter of "public interest."  *Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 25-26 (S.D.N.Y. 2020); *see also, e.g.*, *Blankenship v. NBCUniversal, LLC*, No. 22-1125, 2023 WL 6558383, at *2 (U.S. Oct. 10, 2023) (Thomas, J., concurring in denial of cert.) ("agree[ing] with the Court's decision not to take up [the] question" of whether *New York Times Co. v. Sullivan* remains good law where defamation plaintiff's "claims are independently subject to an actual-malice standard as a matter of state law").  As noted previously, New York law also mandates an award of attorneys' fees to defendants who prevail in meritless claims involving speech on a matter of public interest, which Bouzy reserves his right to seek.

Twitter, "where a reasonable reader will expect to find many more opinions than facts."  Op. at 11.  Moreover, because many such tweets "alluded to the fact that Plaintiff might not be using his real name on social media or that there was 'sure[ly] . . . a reasonable explanation for why' he did not appear in the attorney database," any "reader of these tweets [had] even *less* reason to believe that [Bouzy] was stating a fact when he suggested Plaintiff was not a lawyer."  *Id.* at 13 (emphasis added).

**Second**, as to "tweets [that] question Plaintiff's credentials, including tweets regarding whether Plaintiff was in fact an attorney and former prosecutor," the *only* tweet "that a reasonable reader might view as a statement of fact is [Bouzy's] statement that Plaintiff 'was never a prosecutor.'"  *Id.* at 12.  Because "Plaintiff [did] not allege any facts showing that [Bouzy] knew this statement was false at the time it was published or that he made it with reckless disregard for the truth," Plaintiff failed to plausibly allege actual malice fault.  *Id.* at 14.

**Third**, the Court ruled that Bouzy's "tweets describing Plaintiff as a 'grifter,' 'liar,' 'troll,' or participant in a 'smear campaign'" are nonactionable because they "are clearly opinions in the context in which they were stated, and none of [Bouzy's] tweets making these remarks imply that they are based on undisclosed facts."  *Id.* at 14.  Likewise, Bouzy's "tweets contending or suggesting that Plaintiff committed crimes are also statements of opinion, so they cannot form

the basis of a defamation claim." *Id.*  As the Court explained, the challenged

tweets criticizing Plaintiff over the BS Statement "cannot constitute defamation

because they disclosed the facts upon which they were based," such that Bouzy

"ma[de] it clear to the reasonable reader that his statements accusing Plaintiff of

criminal conduct were 'merely a personal surmise built upon' what Plaintiff said

[on] video." *Id.* (quoting *Gross v. New York Times Co.*, 623 N.E.2d 1163, 1169

(N.Y. 1993)).  In other words, since "the facts upon which [Bouzy's opinions]

were based were disclosed, . . . 'readers can easily judge the facts for themselves'"

and reach their own conclusions.  Op. at 12 (quoting *McCafferty v. Newsweek*

*Media Grp.*, 955 F.3d 352, 357 (3d Cir. 2020)).

**Fourth**, the Court ruled that all of the other tweets that Plaintiff challenged

"are nonactionable opinions because a reasonable reader would not believe them to

be conveying facts, especially in the broader context in which they were made: the

parties sparring on Twitter."  Op. at 15.

**Finally**, the Court rejected Plaintiff's claims for false light and tortious

interference.  With respect to the former, the Court ruled that "neither a false light

claim nor any other common-law privacy tort exists in New York." *Id.* at 8.  In so

doing, the Court rejected Plaintiff's argument "that the same underlying facts

support a 'defamation by implication' claim under New York law" both because

Plaintiff had not asserted such a claim in his initial Complaint and because, "[i]n

10

any event," the initial Complaint "lacks sufficient facts to state a defamation

claim" under that theory.  *Id.*[8]  The Court also rejected Plaintiff's attempt to recast

his defamation claim as one for intentional interference with prospective business

advantage because he did not allege "that [Bouzy] interfered with any specific

contract or binding business relationship," that Bouzy's "actions amounted to a

crime or tort," or that he "acted with the sole purpose of inflicting harm on

Plaintiff."  *Id.* at 15-16.

Having determined that Plaintiff failed to state a claim, the Court granted

Bouzy's motion to dismiss in full.  *Id.* at 16.  The Court entered dismissal *with

prejudice* as to Plaintiff's false light claim and with respect to his other claims to

the extent they were "based on statements which are nonactionable opinions" and

which, as explained above, was the case with respect to all but the "prosecutor"

statement.  The Court dismissed claims related to that statement *without* prejudice

and allowed Plaintiff to file an amended complaint subject to those limitations.  *Id.*

E.    **Plaintiff's First Amended Complaint**

On September 6, 2023, Plaintiff filed his First Amended Complaint,

asserting claims for defamation *per se* by implication (Count I), defamation *per se*

---

[8] Although Plaintiff did not assert a separate cause of action styled "defamation by
implication" in his initial Complaint as he does here, the parties nevertheless
briefed that issue thoroughly.  *See* Def.'s Mem. in Supp. of Mot. to Dismiss at 32-
35 (ECF 10-2); Pl.'s Mem. of Law in Opp. at 27-28, 35-36, 39 (ECF 12); Def.'s
Reply Mem. at 8, 13 (ECF 13).

(Count II), and defamation *per quod* (Count III).  FAC ¶¶ 87-105.  Despite the

Court's straightforward instructions in its Opinion and Order, Plaintiff's amended

pleading attempts to re-litigate numerous statements that the Court concluded were

nonactionable opinions.[9]  Moreover, the First Amended Complaint makes only a

passing mention of the statement this Court ruled is "the *only* one that a reasonable

reader might view as a statement of fact," namely, Bouzy's assertion that Plaintiff

"was never a prosecutor."  Op. at 12 (emphasis added); FAC ¶¶ 60, 62.  The First

Amended Complaint also attempts to challenge ten additional tweets calling

Plaintiff a "fraud" or questioning Plaintiff's efforts to fundraise from supporters,

ostensibly to pay his expenses for litigating this action.  *Id.* ¶¶ 77-85.

      Like the initial pleading, the First Amended Complaint seeks compensatory

damages, punitive damages, an order directing Bouzy to retract his challenged

tweets, an order requiring Bouzy to "arrange for and purchase corrective

advertising in such form and in such publications and media as shall be determined

by the Court," and an award of attorneys' fees and costs.  FAC at 28.

      With Plaintiff's agreement, the Court extended the deadline for Bouzy to

respond to the First Amended Complaint until November 8, 2023.  *See* ECF Nos.

18-21.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Bouzy now moves to

---

[9] Specifically, the First Amended Complaint attempts to re-litigate the statements
identified in the Appendix to Bouzy's prior Motion to Dismiss (ECF 10-3) as
Tweet Nos. 2, 3, 4, 6, 7, 13, 15, 19, and 22.

dismiss Plaintiff's First Amended Complaint, with prejudice, for failure to state a claim.

## ARGUMENT

As this Court explained in its Opinion granting Bouzy's prior motion to dismiss, "[a]n adequate complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Op. at 6 (quoting Fed. R. Civ. P. 8(a)(2)).  "This Rule 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Indeed, "[a] claim for relief must be 'plausible' and a complaint will not survive a motion to dismiss if the 'well-pleaded facts do not permit the court to infer more than the mere possibility' of defendant's liability."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

As this Court's prior ruling demonstrates, defamation claims are particularly well-suited to adjudication on a preliminary motion because "in a libel suit the central event – the communication about which suit has been brought – is ordinarily before the judge at the pleading stage.  He or she may assess it upon a motion to dismiss, firsthand and in context."  2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017) (footnote omitted).  Moreover, as then-Judge Kavanaugh observed, "[t]o preserve First Amendment freedoms and give reporters,

commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 108-09 (D.C. Cir. 2017). For these reasons, courts routinely adjudicate defamation claims at the motion to dismiss stage. *See, e.g.*, *McCafferty*, 955 F.3d at 357-60 (affirming dismissal with prejudice of defamation claims because challenged statements were nonactionable opinion and for failure to plausibly plead actual malice); *Pace v. Baker-White*, 850 F. App'x 827, 833 (3d Cir. 2021) (same). It is time for the Court to weed out this wholly unmeritorious lawsuit and to dismiss Plaintiff's First Amended Complaint in its entirety and with prejudice.

## I.   PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION.

### A.   Plaintiff Has Improperly Re-Pled Statements That The Court Already Dismissed With Prejudice As Nonactionable Opinions.

The bulk of the First Amended Complaint simply re-alleges statements that this Court both found were absolutely protected expressions of opinion *and* as a result dismissed *with prejudice*. The Court ruled that statements about Plaintiff's professional experience other than the "prosecutor" statement, and that statements describing Plaintiff as a "grifter" and the like, were non-actionable opinions. Op. at 14. The Court likewise ruled that tweets about the BS Statement, and the video in which it appeared, were nonactionable opinions based on disclosed facts. *Id.* at

14

14-15.  Having determined as a matter of law that, on their face, such statements could not state a claim, the Court limited its dismissal without prejudice of the defamation claims "except insofar as they are based on statements which are nonactionable opinions." *Id.* at 16; *see also* Order at 1 (same).  Put differently, because the Court ruled these statements absolutely protected expressions of opinion as a matter of law – and therefore not the type of factual statement required to state a defamation claim under both federal constitutional and New York law – the statements are, by definition, simply nonactionable, and dismissal as to them was necessarily with prejudice.

Despite these rulings, Plaintiff's new complaint re-alleges many of the same exact statements that the Court has already ruled to be nonactionable.  *See, e.g.*, FAC ¶¶ 39-56, 88-92, 97-98 (re-alleging numerous statements about Plaintiff's credentials that were previously challenged in the initial Complaint and adjudicated to be nonactionable opinions); *id.* ¶¶ 75-76 (same with respect to numerous previously-challenged statements labelling Plaintiff as a "grifter" and the like and allegedly implying he "committed fraud"); *id.* ¶¶ 63-67, 88-91, 97-98 (same with respect to tweets about the BS Statement and accompanying video). Plaintiff even goes so far as to advance the same exact theory that Bouzy knew all along about Plaintiff's status as a lawyer, which this Court considered and expressly rejected.  *Compare* FAC ¶¶ 47-56 (renewing allegation based on

15

Bouzy's "already had the information" statement), *with* Op. at 13 (concluding that "[t]his statement does *not* demonstrate that Defendant knew at the outset that Plaintiff was in fact a lawyer under another name") (emphasis added). Because the Court's dismissal without prejudice expressly excluded claims "based on statements which are nonactionable opinions," effectively dismissing them with prejudice, the Court should reject out of hand Plaintiff's improper attempt to re-litigate those same exact claims in an amended pleading.[10]

In sum, Plaintiff has directly flouted this Court's instructions, and wasted its time, in making these same arguments over the same tweets as if they had not already been adjudicated as nonactionable as a matter of law. *See, e.g.*, *Gadsden v. Jersey City Educ. Ass'n*, 2008 WL 8920212, at *1 (D.N.J. July 2, 2008) (plaintiff's "attempt to re-litigate" various "claims and factual allegations" that are "repetitive of" claims that had been "previously adjudicated" and "dismissed . . . with prejudice" is "improper," "result[s] in a waste of judicial resources and will not be tolerated"); *Baker v. Latham Sparrowbush Assocs.*, 808 F. Supp. 992, 997

---

[10] Plaintiff also bears the burden of pleading and proving that the challenged statements are materially false. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). As the Court explained previously, "Plaintiff concedes that the name he used on social media was not his real name, so that it was not false for [Bouzy] to say he could not locate Plaintiff's bar number or find him in the attorney database." Op. at 12-13. Plaintiff ignores the Court's ruling that these statements are nonactionable as a matter of law for that reason as well. *See* FAC ¶¶ 39-56.

(S.D.N.Y. 1992) (where plaintiff was granted "leave to replead only [certain] state law claims" and "did not obtain or request leave to amend the complaint with respect to the dismissed claims," plaintiff's "insertion of new contentions in the amended complaint to support her [dismissed] claims constitutes an improper attempt to reargue the merits of this court's dismissal of these claims in its prior ruling"), *aff'd*, 72 F.3d 246 (2d Cir. 1995).  The Court should again reject these improperly recycled claims.

### B.  Plaintiff Fails To State A Claim As To The <u>Only</u> Tweet The Court Concluded Could Reasonably Be Read As A Statement Of Fact.

In dismissing Plaintiff's initial Complaint, the Court found that, among all of the challenged tweets, there was "only one that a reasonable reader might view as a statement of fact," namely, Bouzy's "statement that Plaintiff 'was never a prosecutor.'"  Op. at 12.  Because the Court concluded that "Plaintiff fails to plead facts showing that [Bouzy] made this statement with actual malice," it ruled that this tweet was also not "actionable defamation."  *Id.*  The Court afforded Plaintiff the opportunity to cure this failure, dismissing his claims based on that tweet *without* prejudice.  *Id.* at 16.  But the First Amended Complaint barely mentions this statement, *see* FAC ¶¶ 60, 62, and Plaintiff does not even *attempt* to plead additional facts about Bouzy's subjective awareness of falsity with respect to this tweet.

As this Court explained, actual malice can be found only where a defendant published a challenged statement with "knowledge that it was false," Op. at 10 (internal marks omitted), or with a "high degree of awareness of [its] probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). At the pleading stage, therefore, the question is whether the plaintiff "alleges [any] nonconclusory facts that support the proposition that [defendant] knew that it was reporting falsities." *BYD Co. v. VICE Media*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021) (dismissing defamation claim for failure to plausibly allege actual malice), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022) (summary order), *cert. denied*, 143 S. Ct. 103 (2022). Indeed, "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Michel v. NYP Holdings*, 816 F.3d 686, 701-02 (11th Circ. 2016) (collecting cases).[11]

---

[11] *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 57-58 (1st Cir. 2012); *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *McCafferty*, 955 F.3d at 360; *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 745 (5th Cir. 2019); *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 868 (6th Cir. 2020) (defamation plaintiff failed to make plausible allegation of actual malice necessary to overcome state-law qualified privilege); *Pippen v. NBCUniversal Media*, 734 F.3d 610, 614 (7th Cir. 2013); *Nelson Auto Ctr. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020); *Yeager v. NPR*, 773 F. App'x 1030, 1031-32 (10th Cir. 2019); *Turner v. Wells*, 879 F.3d 1254, 1273-74 (11th Cir. 2018); *Tah v. Global Witness Publ'g*, 991 F.3d 231, 239-40 (D.C. Cir. 2021).

The Court previously found that Plaintiff had failed to plead facts that, if proven, would constitute actual malice with respect to the "prosecutor" statement. Because Plaintiff has provided no reason whatsoever to reach a different conclusion now, and has already been afforded an opportunity to amend, the Court should dismiss Plaintiff's claims as to this statement with prejudice.

### C.   Plaintiff Fails To State A Claim Over "New" Tweets About His Litigation Fundraising.

 Although the Court's Opinion and Order granting Plaintiff leave to amend did not expressly permit him to raise new statements, he attempts to challenge ten additional tweets in his First Amended Complaint.  *See* FAC ¶¶ 77-83.  Even if doing so were proper, these new tweets generally raise questions and/or express opinions about Plaintiff and his litigation fundraising activities.  *Id.*  For the same reason as other analogous tweets about his fundraising already dismissed by the Court, these tweets are also nonactionable opinions.[12]

The first "new" tweet characterizes Plaintiff as "a fraud" because Plaintiff continued to insist, over Bouzy's denials, that "Bouzy was paid by Meghan

---

[12] For the Court's convenience, copies of these "new" tweets are attached as Exhibits A-G to the Second Reiley Certification.  We note that these ten tweets comprise only seven exhibits because several of the challenged statements appear in tweets that are part of the same thread.  In addition, unlike Plaintiff's FAC, which cherry-picks passages or selected tweets, we present these threads in full so that the Court can evaluate them in their full context, as required.

Markle, Amber Heard's team, Lisa Page, and Pete Buttigieg."  FAC ¶ 77; Ex. A.[13] As was Plaintiff's practice in his initial Complaint, he attempts to obfuscate the context of this tweet by cropping it, but as seen in full, Bouzy's tweet includes a screenshot of Plaintiff's own tweet that discloses to readers the basis for Bouzy's characterization.  The tweet is therefore just like the nonactionable ones "describing Plaintiff as a 'grifter,' 'liar,' 'troll,' or participant in a 'smear campaign'" because it is "clearly" an "opinion[] in the context in which [it was] stated" and because it does not "imply that" it is "based on undisclosed facts."  Op. at 14; *see also Biro v. Condé Nast*, 883 F. Supp. 2d 441, 463 (S.D.N.Y. 2012) ("[T]he use of the terms 'shyster,' 'con man,' and finding an 'easy mark' is the type of 'rhetorical hyperbole' and 'imaginative expression' that is typically understood as a statement of opinion.") (discussed in Bouzy's prior briefing, *see* ECF 10-2 at 33).

The other nine "new" tweets all address Plaintiff's efforts to solicit donations for his litigation fund and are virtually indistinguishable from the tweets on the same subject that the Court already found to be nonactionable.  FAC ¶¶ 81-83; Exs. B-G.  Plaintiff claims these tweets accuse him of "committing criminal

---

[13] This tweet was posted on October 14, 2022, before Plaintiff filed this lawsuit. FAC ¶ 77.  Plaintiff offers no explanation why he failed to challenge it in his initial Complaint.

activity," FAC ¶ 80, but viewed in context and read in full, the tweets merely pose various questions about whether Plaintiff was forthright with his supporters as to how their donations would be used – *i.e.*, to pay down *existing* legal expenses arising from the initial Complaint and motions practice, or to build up a war chest for *future* legal expenses that Plaintiff hoped to incur *if* his case were to survive dismissal.

These tweets cannot support a defamation claim, either directly or by implication. **First**, as Bouzy explained in briefing his prior motion to dismiss, *see* ECF 10-2 at 23 & ECF 13 at 7-8, questions like the ones posed in these tweets are not actionable statements of fact as a matter of law.  It is "generally settled as a matter of defamation law" that "a question, 'however embarrassing or unpleasant to its subject, is not accusation,'" and that questions are not actionable because they "indicate a defendant's 'lack of definitive knowledge about the issue.'" *Abbas v. Foreign Policy Grp.*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (Kavanaugh, J.) (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993) and *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995)).

Indeed, Bouzy's tweets are just like questions and statements that the Fourth Circuit concluded were nonactionable in *Chapin*, 993 F.2d 1087, a decision that Plaintiff himself invoked in his prior briefing, ECF 12 at 24 n.8, and that has been cited with approval by both New York state and federal courts.  *See Stepanov v.*

*Dow Jones & Co.*, 120 A.D.3d 28, 37 (N.Y. App. Div. 1st Dep't 2014); *Biro*, 883 F. Supp. 2d at 464; *Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 698 (S.D.N.Y. 1995), *aff'd*, 119 F.3d 1018 (2d Cir. 1997). In *Chapin*, the defendants published a report that "pointedly questioned the finances" of the plaintiffs' charitable fundraising efforts for U.S. troops overseas and "wondered aloud 'where the rest of the money goes.'" 993 F.2d at 1091. Affirming dismissal of the complaint, the Fourth Circuit explained that questioning who the donations "will benefit more" between the plaintiffs and the service members "simply provokes public scrutiny of the plaintiffs' activities," and "[v]oluntary public figures must tolerate such examination." *Id.* at 1094. The passage questioning "'where the rest of the money goes'" – where plaintiffs "would not tell" defendants and defendants "invited the public to ask" – was likewise immune from defamation liability. *Id.* at 1096. The Court also rejected plaintiffs' implication claim, observing that "plaintiffs argue that the question implies the answer: Chapin is a dishonest man who pockets the difference. That answer was certainly within the wide range of possibilities, which is precisely why we need and must permit" publishers and speakers "to ask the question." *Id.*

Here, Bouzy likewise "pointedly questioned" Plaintiff's fundraising during the pendency of this litigation. Specifically, Bouzy asked whether Plaintiff was seeking donations to pay down his *actual* expenses for work performed prior to

and on the initial Complaint and in response to Bouzy's motion to dismiss, or to build up a war chest for the *potential future* expenses that Plaintiff might incur in the future *if* the case survived a motion to dismiss.  In essence, Bouzy asked whether Plaintiff had been forthright with donors on that point.  Exs. B-G.  As in *Chapin*, Bouzy asked Plaintiff to clarify the issue by providing copies of his invoices that would show whether he had a remaining balance, *see id.*, and Bouzy invited Plaintiff's donors to ask as well, *see* Ex. E at 1 ("If you donated to Nathaniel, ask him if he had a previous legal bill before his second fundraiser, and did he use the money from the second fundraiser to pay the past-due bill?  If he refuses to answer the question, then you have your answer.").

Just like the statements in *Chapin* and the tweets about Plaintiff's initial fundraising that this Court already found to be nonactionable, these "new" tweets cannot give rise to a defamation claim because they are either posing nonactionable questions or expressing nonactionable opinions based on disclosed facts.  In neither case do they constitute statements of fact of the type that can be actionable in defamation.

**Second**, to the extent Plaintiff invites the Court to construe these tweets to *imply* that he "was committing" the crime of "fraud," *see* FAC ¶ 81, the tweets are still nonactionable.  New York law imposes an extraordinarily high bar on defamation by implication claims.  "To survive a motion to dismiss a claim for

23

defamation by implication," the plaintiff "must make a rigorous showing that the language of the communication as a whole can be reasonably read both [1] to impart a defamatory inference and [2] to affirmatively suggest that the author intended or endorsed that inference." *Stepanov*, 120 A.D.3d at 37-38.  Plaintiff has not, and cannot, make this "rigorous showing."  The tweets at issue, while pointedly accusing him of misleading his supporters, cannot be reasonably read as accusing him of a crime, much less affirmatively indicate that Bouzy "intended or endorsed that inference."

Moreover, *even if* the "new" tweets could clear that high bar for defamation by implication claims, the implication of criminality Plaintiff ascribes to them would, in any event, be a protected expression of Bouzy's opinion because the tweets "disclose[] the facts on which [they are] based" and do "not imply the existence of undisclosed facts."  *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997).  As this Court already noted, "accusations of criminality would not be actionable 'if the facts on which they are based are fully and accurately set forth and it is clear . . . that the accusation is merely a personal surmise built upon those facts.'"  Op. at 9-10 (quoting *Gross*, 623 N.E.2d at 1169).  Thus, even if the tweets could be read to imply that Plaintiff misled his supporters, that implication is shielded by the branch of the opinion doctrine that protects conclusions – both express and implied – based on disclosed facts.  Indeed, "[i]f the Constitution

protects an author's right to draw an explicit conclusion from fully disclosed facts,

then an unstated inference that may arise in a reader's mind after reading such facts

is also protected as an implicit expression of the author's opinion." *Biro*, 883 F.

Supp. 2d at 468; *see also Chapin*, 993 F.2d at 1096 (affirming dismissal of

defamation by implication claim based on questions raised about fundraising

activities).[14]

**Third**, even if deemed to be statements of fact rather than nonactionable

questions or opinions, these tweets cannot give rise to a defamation claim because,

once again, Plaintiff fails to allege *any* facts that, if true, would demonstrate Bouzy

published them with actual malice.  The First Amended Complaint's only

allegations on this point note that Plaintiff "shared a series of wire transfers" and

"supplied receipts" to show the funds he was raising were going to his attorneys.

*See* FAC ¶¶ 78-80, 82-83, 85.  But the challenged tweets make clear that Bouzy

was not questioning *whether* Plaintiff was transferring funds to his attorneys –

---

[14] Plaintiff's description of his implication cause of action as "defamation *per se* by implication," FAC at 25, illustrates his fundamental misunderstanding of how an implication claim works.  Defamation *per se* is defamation that is obvious on the face of the challenged statement (and moreover that relates to specific topics long recognized at common law as presumptively defamatory and injurious).  By contrast, an implication claim is by definition not actionably defamatory in such a self-evident way and requires reference to extraneous or omitted facts or circumstances to be rendered actionable.  *See, e.g.*, *Zimmerman v. Buttigieg*, 576 F. Supp. 3d 1082, 1098 (M.D. Fla. 2021) ("defamation by implication and defamation *per se* are mutually exclusive").

rather, Bouzy was questioning *why* Plaintiff was transferring those funds, and Bouzy repeatedly noted that the "wire transfers" Plaintiff shared could not and did not answer that question. *See, e.g.*, Ex. C at 1 ("Anything besides releasing the invoices from the law firm and disclosing the remaining balance is noise."); Ex. E at 1 ("I am not a lawyer, but if someone claims they are raising money for future legal expenses but uses the funds for an undisclosed past-due legal bill, that sounds like fraud to me.  Why would Nathaniel share the wire transfers but refuse to share the invoices?").  Plaintiff thus makes no allegations plausibly showing that Bouzy posted these tweets with actual malice – *i.e.*, that he knew what he was publishing was false or that he had a high degree of awareness of probable falsity.  As a result, he fails to state a defamation claim as a matter of law.

The failure to allege actual malice is equally fatal to Plaintiff's defamation by implication claim.  To the extent that Plaintiff claims that Bouzy's "new" tweets purportedly convey some implication about his fundraising *beyond* questioning the distinction between past expenses and future expenses, Plaintiff must plead (and ultimately prove) not only that Bouzy was subjectively aware of the probable falsity of that implication, but also that Bouzy *intended* to communicate that additional false implication. *See Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 92 (3d Cir. 2013).  This is because Bouzy could not have been subjectively aware that an implication was false if he did not know he was communicating that

implication in the first place.  *Id.*  Nothing in the First Amended Complaint

plausibly demonstrates that Bouzy intended to convey anything about Plaintiff's

fundraising beyond the questions he was specifically and pointedly asking in the

tweets, let alone that he *knew* any such implication was false at the time of

publication.

      For all these reasons, Plaintiff fails to state a claim for defamation or

defamation by implication over the "new" tweets.  Because the tweets are

nonactionable as a matter of law, the Court should dismiss the claims arising out of

them with prejudice.

      **D.**      **Plaintiff Further Fails To State A Claim For Defamation *Per Quod* Because He Does Not Allege Special Damages.**

      In addition to failing on each of the above grounds, Plaintiff's defamation

*per quod* count fails for the additional reason that he fails to allege special

damages.  It is well settled under New York law that a plaintiff asserting

defamation *per quod* is "required to plead and prove special damages to prevail on

his libel claim."  *Agnant v. Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998).  "To

satisfy the special damages requirement, a plaintiff must set forth an itemized

account of his losses; round figures, general allegations of a dollar amount or

boilerplate allegations of some impairment to business reputation are insufficient."

*Id.* (citing *Newsday, Inc. v. C.L. Peck Contractor, Inc.*, 451 N.Y.S.2d 415, 417

(N.Y. App. Div. 1st Dep't 1982)).  Here, Plaintiff's only reference to special

damages can be found in his assertion that he "seeks actual damages for reputational injury, compensatory damages, and special damages for lost contracts resulting from the defamatory statements." FAC ¶ 96. But "such a general allegation does not satisfy the requirement of pleading special damages, and plaintiff's [*per quod*] claims would therefore fail as a matter of law." *Agnant*, 30 F. Supp. 2d at 426. Moreover, Plaintiff's generalized contention that he suffered "special damages" is undermined by his admissions that his fundraising was a "good grift," Ex. 25 at 6:51 - 7:10 (*see* note 5 *supra*), that he "can't say" Bouzy's tweets "hurt [him] financially," *id.* at 1:02:45 - 1:03:19, and that the tweets were "actually helping" him, *id.*

The Court should dismiss Plaintiff's claim for defamation *per quod* on this basis as well.[15]

---

[15] In addition to the other fatal flaws in Plaintiff's claims enumerated herein, his renewed requests for injunctive relief remain improper. "Equitable relief requires a showing that there is no adequate remedy at law," *SEG Sports Corp. v. State Athletic Comm'n*, 952 F. Supp. 202, 204 (S.D.N.Y. 1997), and "as a matter of law, money damages for defamation is an adequate remedy at law," *Palin v. New York Times Co.*, No. 17-cv-4853 (JSR), 2020 WL 353455, at *2 (S.D.N.Y. Jan. 19, 2020) (citing *Ventura v. Kyle*, 825 F.3d 876, 887 (8th Cir. 2016)). Also, even had Plaintiff stated a valid claim, an order *compelling* speech (in the form of a forced retraction or mandated corrective advertising) would violate the First Amendment. *See, e.g.*, *Wooley v. Maynard*, 430 U.S. 70, 714 (1977) (First Amendment protects "both the right to speak freely and the right to refrain from speaking").

## II.     THE COURT SHOULD DISMISS THE CASE WITH PREJUDICE.

As Plaintiff's First Amended Complaint has shown, no amount of re-pleading can transform nonactionable expressions of opinion – whether in the previously-challenged tweets or the new ones – into statements of fact.  And Plaintiff has already had a full and fair opportunity to amend his complaint to plead actual malice with respect to the "prosecutor" statement, but did not do so and indeed barely mentions it.  As a result, allowing further amendment would be futile.  *See, e.g.*, *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted").  The Court should now dismiss the case in its entirety with prejudice.

## CONCLUSION

For the reasons stated above, Bouzy respectfully requests that the Court dismiss Plaintiff's First Amended Complaint in its entirety and with prejudice.  As explained in note 7 *supra*, Bouzy continues to reserve his right to seek attorneys' fees and costs following adjudication of this motion.

29

Dated:  November 8, 2023

Respectfully submitted,

BALLARD SPAHR LLP
A Pennsylvania Limited Liability Partnership

Seth D. Berlin (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel:  (202) 661-2200
Fax:  (202) 661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

By */s/ William P. Reiley*
    William P. Reiley (128872014)
700 East Gate Drive, Suite 330
Mount Laurel, NJ 08054-00015
Tel:  (856) 761-3465
Fax: (856) 761-1020
reileyw@ballardspahr.com

*Attorneys for Defendant Christopher E. Bouzy*

30