# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATHANIEL J. BROUGHTY,<br><br>               Plaintiff,<br><br>v.<br><br>CHRISTOPHER E. BOUZY,<br><br>               Defendant. | Case No.: 22-6458-SDW-JRA |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

DHILLON LAW GROUP INC.
A CALIFORNIA PROFESSIONAL CORPORATION
Ronald D. Coleman (Bar No. 2288835)
Josiah Contarino (Bar No. 5128517)
50 Park Place, Suite 1105
Newark, NJ 07102
t. (973) 298-1723
rcoleman@dhillonlaw.com
jcontarino@dhillonlaw.com
*Attorneys for Plaintiff*
*Nathaniel J. Broughty*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ...........................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........................2

    Defendant's Tweets About Plaintiff's Credentials ................................3

    The Initial Complaint, Motion to Dismiss, and Court's Opinion ......................5

STANDARD OF REVIEW ....................................................................9

I.    THE FIRST AMENDED COMPLAINT STATES A DEFAMATION BY IMPLICATION CLAIM UNDER NEW YORK LAW. ......................................10

    A.   Defamation By Implication is not the same as Defamation.......................10

    B.   Defendant's Motion Does Not Address Elements of Defamation by Implication Concerning Statements About Plaintiff's Credentials....................12

    C.   Defendant's Factual Statements About Plaintiff's Credentials Are Actionable for Defamation by Implication under New York Law....................14

II.  PLAINTIFF HAS PLED FACTS SUFFICIENT TO SHOW THE DEFENDANT KNOWINGLY OMITTED RELEVANT INFORMATION, SHOWING DEFENDANT MADE THE STATEMENTS WITH ACTUAL MALICE.........................................................................................20

III.   THE COMPLAINT STATES A CLAIM FOR DEFAMATION AND/OR DEFAMATION BY IMPLICATION CLAIM UNDER NEW YORK LAW IN REGARD TO LITIGATION FUNDRAISING...................................................28

    A.   Factor 1 | Whether the Specific Language in Issue Has a Precise Meaning Which Is Readily Understood. ...........................................................31

    B.   Factor 2 | Whether the Statements Are Capable of Being Proven True or False.........................................................................................32

    C.   Factor 3 | Whether the Context of The Communication Are Such as To Signal Readers or Listeners That What Is Being Read or Heard Is Likely to Be Opinion, Not Fact.....................................................................32

    D.   Rigorous Showing ......................................................................35

# TABLE OF AUTHORITIES

## Cases

*Armstrong v Simon & Schuster*, 85 N.Y.2d 373 (N.Y. 1995)  11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)  9, 15

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015)  20, 26

*Bose Corp. v. Consumers Union of United States, Inc.*, 692 F. 2d 189 (1st Cir. 1982)  21

*Brian v. Richardson*, 87 N.Y.2d 46 (N.Y. 1995)  36

*Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993)  36

*Crime Victims Ctr., Inc. v. Logue*, 119 N.Y.S.3d 550 (N.Y. App. 2020)  18

*Dalbec v. Gentleman's Companion, Inc.*, 828 F. 2d 921 (2d Cir. 1987)  21

*Davis v. Boeheim*, 24 N.Y.3d 262 (2014)  *passim*

*Gross v. New York Times Co.*, 82 N.Y.2d 146 (N.Y. 1993)  14, 15

*Herbert v Lando*, 781 F2d 298 (2d Cir 1986)  11

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010)  10

*Known v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6 (N.Y. App. Div. 2015)  18

*Konrad v Brown*, 91 A.D.3d 545 (N.Y. App. 2012)  12

*McCafferty v. Newsweek Media Grp.*, 955 F.3d 352 (3d Cir. 2020)  21, 26

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)  25, 26

*Rand v. N.Y. Times*, 75 A.D.2d 417 (N.Y. App. 1980)  15

*See Partridge v State of New York*, 173 A.D.3d 86 (N.Y. App. 2019)  11, 12

*Silsdorf v Levine*, 59 NY2d 8 (N.Y. 1983)  12

*St. Amant v. Thompson*, 390 U.S. 727 (1968)  26

*Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28 (N.Y. App. Div. 2014)  11

*White v Fraternal Order of Police*, 909 F2d 512 (D.C. Cir .1990)  11

*Zervos v. Trump*, 59 Misc. 3d 790 (N.Y. Tr. Ct. 2018)  *passim*

*Zuckerbrot v. Lande*, 75 Misc. 3d 269 (N.Y. Tr. Ct. 2022)                              31

**Statutes**

Fed. R. Civ. P. 12(b)(6)                                                            *passim*

Fed. R. Civ. P. 8(a)(2)                                                                   9

**Treatises**

Restatement (Second) of Torts, § 580A                                                    26

## PRELIMINARY STATEMENT

The Defendant's Motion to Dismiss puts forth an unusual request for the Court to make a ruling that is inherently contradictory and legally impossible under New York Law. The Motion then misrepresents the essential conclusions of the Court's earlier decision, debates points not raised in the First Amended Complaint, and asks the Court to ignore the additional information and new legal arguments that have been incorporated into the First Amended Complaint.

The Defendant's Motion to Dismiss overlooks the crucial New York legal standards that are essential for resolving this case. For example, the Defendant fails to consider the established three-factor test determined by New York's highest court. *See Davis v. Boeheim*, 24 N.Y.3d 262, 268 (N.Y. 2014). This test is pivotal in deciding whether a reasonable reader would perceive the statement as stating a fact or merely expressing a non-actionable opinion. Id. Additionally, the Defendant references legal precedents from foreign jurisdictions, disregarding the authoritative rulings of the New York Court of Appeals.

Defendant's own motions and pleadings argue for the truth of the allegations about the Plaintiff's qualifications in both the original and amended complaints, vociferously arguing Defendant's Twitter posts should be viewed as "Literally True" and "Substantially True" by Defendant. *See* Docket Entry ("ECF") 10, Motion to Dismiss Original Complaint (the "MTDOC") at 2.  The Court in its Opinion also

determined these statements to be "substantially true with respect to the social media persona being referenced" with specific respect to the standard defamation claim that was then pending under New Jersey law. *See* ECF 14, Opinion ("Op.") at 11. The court's findings relating to truth legally preclude these statements from being statements of opinion, as only facts can be capable of being "true" under New York law. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-53 (N.Y. 1993)

The Defendant's Motion to Dismiss requests an impossible ruling under New York law, seeking to classify statements as both factual and opinion in a defamation claim. The motion inaccurately represents the Court's previous decision, overlooks key New York legal standards, particularly the established three-factor test, and incorrectly applies a 'Twitter defense', suggesting statements on Twitter should be viewed as opinions, a notion not supported by New York courts. Additionally, the motion fails to acknowledge the Defendant's own admissions regarding the truth of the allegations and ignores significant new information and arguments presented in the First Amended Complaint.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Nathaniel Broughty, known as "Nate the Lawyer," is a former City University Police Officer and Assistant District Attorney, now running a popular YouTube channel aimed at demystifying law. His channel, part of the legal community on YouTube known as "LawTube." FAC ¶ 1. Mr. Broughty has gained a significant

following and is known for its live streams and on-demand videos that cover legal topics and high-profile trials. Mr. Broughty's credibility and expertise have been key to his channel's success in making legal discussions accessible and engaging to a broad audience. *Id*.

Defendant Christopher Bouzy is the founder of Bot Sentinel, is an online platform that claims to fight false information intended to mislead the public. *Id.* ¶ 2. Defendant has been repeatedly identified by multiple academic journals and most major press outlets as the leading expert in his field in both detecting and identifying false and misleading information on Twitter. *Id.* Defendant has been cited by numerous academic articles, research and development firms, news organizations, and mainstream media publications such as the Los Angeles *Times*, NBC News, and the Washington *Post*. *Id.*

**Defendant's Tweets About Plaintiff's Credentials**

On September 17, 2022, Defendant published several tweets forming a "thread"—a connected series of tweets focusing on a particular topic—stating and implying Broughty was not a licensed attorney. Defendant falsely claimed that "Nate the Lawyer" was lying about being a licensed attorney. *Id*. ¶ 40-41 He complained that YouTube did not verify that those who claimed to have professional licenses actually did. *Id.* Defendant also claimed to have proved that Mr. Broughty was not a lawyer based on his failure to find Mr. Broughty on the online New York attorney

database. *Id* ¶ 43. As it turned out, however, Defendant was not searching for Mr. Broughty's correct name but his online alias Nate Broady, despite his being in possession of Plaintiff's name, demonstrating malice with actual knowledge of the truth. *Id.* ¶ 52.

The following day, September 18, 2022, other Twitter users noted that Nate Broady's actual name was Nathaniel Broughty, a fact that was easily found on Twitter, raising questions about how a leading research expert on the platform could have missed such readily available information. *Id.* ¶ 46. Defendant responded that he "I already has the information and was waiting for someone else to tweet it so I would not be accused of "doxxing." Reread the thread slowly." *Id.* ¶ 47 (emphasis added). To demonstrate his prior knowledge, Defendant shared a series of tweets known as a thread from September 17, 2022, during which he was asserting and implying that Broughty was not a legitimate lawyer. *Id.* ¶ 49.  To make the point crystal clear Defendant highlighted one sentence within the thread "Maybe the name he is using isn't his real name."  *Id.* ¶ 49.  This now pointed to a specific point in time around which Defendant knew Broughty's legal name and deliberately looked up Broughty's online alias "Broady" while having full knowledge of Broughty's legal name, demonstrative intent to deceive in his Twitter thread. Defendant stated that readers needed to "read between the lines." *Id.*

4

Defendant argued that the statements concerning Broughty's credentials were literally true and substantially true. ECF 10, OMTD at 2. The Court found that "Defendant's statement that there was "no history of him practicing" is still substantially true with regard to the social media persona he was apparently referencing", but only made this ruling with respect to a standard defamation claim under New Jersey law looking to the words on a surface level, not the defamation by implication claim under New York specific law Plaintiff now raises. Op. at 13.

### The Initial Complaint, Motion to Dismiss, and Court's Opinion

In October 2022, the Plaintiff initiated a lawsuit in the New Jersey Superior Court against Defendant, alleging defamation per quod, defamation per se, false light invasion of privacy, and intentional interference with prospective business advantage, as detailed in the Notice of Removal (ECF No. 1) at 36-38. The lawsuit alleged that Defendant defamed Broughty by: (1) stating Plaintiff was not an attorney and former prosecutor and (2) additional statements impugning the Plaintiff's character and work history. Defendant transferred the case to this Court in November 2022. Then, in January 2023, Defendant filed a motion to dismiss the Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), citing a failure to establish a valid legal claim. (ECF 10).

The Court ruled that In August 2023, this Court issued an Opinion (ECF 14) and Order (ECF 15) granting the motion to dismiss in full. As a threshold matter, the

5

Court determined that New York law governs this action, Op. at 7-8. The Court dismissed that Plaintiff's 'false light tort' with prejudice, "since neither a false light claim nor any other common-law privacy tort exists in New York." *Id*. at 11.

The Court then concluded that Plaintiff failed to state a claim for multiple reasons. As to the claims about Plaintiff credentials the court found the statements to be substantially true writing "Defendant's statement that there was "no history of him practicing" is still substantially true with regard to the social media persona he was apparently referencing." *Id*. at 13. Because the falsity of the statement is an element of the defamation claim, the statement's truth or "substantial truth" is an absolute defense with respect to the standard defamation claim plaintiff previously presented. The court looking at the statements in isolation also ruled that in the context of the statement a reasonable reader would view the statements as opinions and that the plaintiff failed to plead actual malice.

The Court did not make an advisory opinion on claims not raised by the Plaintiff. The Court did note that since defamation by implication was not raised in the Complaint stating, "Plaintiff briefly argues that the same underlying facts support a 'defamation by implication' claim under New York law, but he did not assert such a claim in his Complaint." Op. at. at 8.

Broughty amended the Complaint pleading defamation by implication under New York Law (which provides for a different legal analysis compared to the

previously presented claims filed pursuant to New Jersey law) and tailored the First Amended Complaint to New York law with additional factual context specifically relevant to New York case law.

### Distinctiveness of the First Amended Complaint

The Original Complaint was grounded in New Jersey law, which has different pleading standards and requirements for defamation compared to New York law. The Court's decision to apply New York law, as advocated by the Defendant in their Motion to Dismiss the Original Complaint, mandated a reevaluation of the claims under this new legal framework. One result is that the First Amended Complaint introduces a new cause of action—defamation by implication—under New York law, which was not available or pursued under the New Jersey framework in the Original Complaint. This legal theory alters the nature of the claims substantially.

The Plaintiff has added essential context to the Defendant's standing in the community (which is highly relevant to the now presented defamation by implication claim because it goes to the specific issue of how statements that might seem true on the surface actually convey an implication that would be understood by the Twitter audience Defendant was communicating to). Recognized as a leading expert in identifying and correcting false information on Twitter, Defendant's statements carry a unique weight and credibility, particularly as it relates to Defendant's statements communicated on Twitter. The Defendant's work has been

cited worldwide in academia and by multiple major news outlets in the country. This additional context is vital in evaluating how a reasonable person would perceive the Defendant's assertions. Defendant's widely recognized expertise specifically as it relates to Twitter makes defamation by the Defendant on that specific platform substantially more defamatory as compared to the typical Twitter user. In light of his reputation, expertise, and recognized authority relating to Twitter, which Defendant boasts about his filings, the Court should find that these statements made there are particularly damaging to Plaintiff.

The First Amended Complaint provides a broader context for the communications in question, adhering to New York law's requirement to consider the entirety of the conversations, even if they span multiple days as they do here. The new pleading is not a mere reiteration of the Original Complaint; it reflects the complexities and nuances of New York defamation law, adds essential context and evidence, and introduces the defamation by implication cause of action. Defendant, however, neglected to address controlling New York precedent specific to defamation by implication cases throughout his motion. Notably, Defendant overlooks the New York Court of Appeals' three-factor test under *Davis*, instead favoring standards from foreign jurisdictions that have been either rejected or interpreted differently by New York courts.

The Court should not fail to recognize the significant differences between the original Complaint and the First Amended Complaint, both in legal theory and the added factual context. The First Amended Complaint is not as a mere reiteration of its predecessor; it thoroughly addresses the complexities of New York law, incorporates vital additional context, and introduces new facts and evidence. Significantly, it advances a plaintiff's claim for defamation by implication, tailored to meet the specific requirements of New York law, and should be considered on its own merits, separate from the Original Complaint.

## STANDARD OF REVIEW

A motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not require detailed factual allegations; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine whether a complaint states a claim, courts "draw on [their] judicial experience and common sense." The court need only "infer more than the mere possibility of misconduct" to find a claim. Id. at 679. The court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

9

The New York State Court of Appeals addressed a pre-answer motion to dismiss, "As we have previously stated, [i]f, upon any reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action. We apply this liberal standard fully aware that permitting litigation to proceed to discovery carries the risk of potentially chilling free speech, but do so because, as we have previously stated, we recognize as well a plaintiff's right to seek redress, and not have the courthouse doors closed at the very inception of an action, where the pleading meets [the] minimal standard necessary to resist dismissal of [the] complaint." *Davis*, 110 A.D.3d at 1431 (internal citations and quote marks omitted).

I. **THE FIRST AMENDED COMPLAINT STATES A DEFAMATION BY IMPLICATION CLAIM UNDER NEW YORK LAW.**

**A. Defamation By Implication is not the same as Defamation.**

"Defamation by implication' is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements" *Armstrong v Simon & Schuster*, 85 N.Y.2d 373, 380-381 (N.Y. 1995); *Herbert v Lando*, 781 F2d 298, 307 (2d Cir. 1986), *cert. denied* 476 US 1182 (1986) (defamation by implication is "a combination of individual statements which in themselves may not be defamatory might lead the reader to draw an inference that is damaging to the plaintiff"). Otherwise truthful statements may be actionable "[i]f

the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference, the communication will be deemed capable of bearing that meaning." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, at 37-38 (N.Y. App. Div. 2014), quoting *White v Fraternal Order of Police*, 909 F2d 512, 520 (D.C. Cir 1990) (emphasis added). The omission or strategic juxtaposition of key facts may also give rise to a claim for defamation by implication. *See Partridge v State of New York*, 173 A.D.3d 86, 90-91 (N.Y. App. 2019). The plaintiff "must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference" *Stepanov*, 120 A.D.3d at 37-38.

The difference between standard defamation claims and defamation by implication claims is in defamation claims the falsity of the statement is an element of the standard defamation claim, the statement's truth or substantial truth is an absolute defense, which is not an accurate statement of law with respect to a defamation by implication claim, which looks beyond surface level truth to the understood underlying implications. *See Konrad v Brown*, 91 A.D.3d 545, 546 (N.Y. App. 2012). On a motion to dismiss a defamation claim, the court must decide whether the statements, considered in the context of the entire publication, are

11

"reasonably susceptible of a defamatory connotation," such that the issue is worthy of submission to a jury. *Silsdorf v Levine*, 59 NY2d 8, 12 (N.Y. 1983), *cert denied* 464 US 831 (1983) (internal quotation marks omitted). The omission or strategic juxtaposition of key facts may also give rise to a claim for defamation by implication. *See Partridge v State of New York*, 173 A.D.3d 86, 90-91 (N.Y. App. Div. 2019) (emphasis added).

In any case, while statements about Mr. Broughty's credentials made by Defendant might be potentially viewed as literally true on the surface, they can still be subject to legal scrutiny under the concept of defamation by implication. This means that even superficially true statements, depending on their context or how they are presented, can imply a false and defamatory meaning. This is especially true where the Defendant explicitly asks for his readers to look for the implications contained within his statements, as is the case here. (see discussion below).

### B. Defendant's Motion Does Not Address Elements of Defamation by Implication Concerning Statements About Plaintiff's Credentials.

The Defendant's motion seeks to have the Court dismiss the First Amended Complaint, arguing that the statements at issue cannot constitute Defamation under New York law. However, the First Amended Complaint alleges defamation by implication—a distinct legal claim with its own set of criteria. Despite the motion's length, it only disputes the first element of a defamation by implication claim,

concerning the Defendant's factual statements about the Plaintiff's credentials and passively argues that the Plaintiff has not plead actual malice.

Defendant's submission focuses on the following arguments in regards to statements about Plaintiff's credentials.: (1) the "defamation" claim has previously been dismissed by the court; (2) the court has rendered an advisory opinion by dismissing the claim of defamation by implication which was not raised in the original complaint (which is a legal impossibility as Article 3 courts cannot issue advisory opinions); (3) Defendant's argues that factually true statements made on Twitter should inherently be considered non-actionable opinions is at odds with New York Courts' which reject that proposition; and (4) that the Court found the Plaintiff did not sufficiently plead actual malice.

Defendant's motion fails to address Plaintiff's assertions in the First Amended Complaint regarding the additional factual context—that the Defendant made the statements with actual malice and endorsed the defamatory inference. Plaintiff has provided additional facts that demonstrate Defendant's actual knowledge of the truth. The Defendant does not contest the Plaintiff's allegations that the statements, as articulated, could reasonably convey false insinuations, impressions, or implications, and the statements may reasonably be read to impart the false suggestions, impressions, and implications, and that the defendant affirmatively endorsed and intended the defamatory inference. Given the limited scope of the

13

Defendant's motion, the Plaintiff's motion will specifically address the Defendant's assertions.

### C. Defendant's Factual Statements About Plaintiff's Credentials Are Actionable for Defamation by Implication under New York Law.

#### 1. Statements of Opinion versus Statements of Facts

First, it's essential to determine whether the statements in question are facts or opinions, as under New York law, both can be subject to legal action depending on specific circumstances. To distinguish expressions of fact from opinion the New York law states that "since falsity is a necessary element of a defamation cause of action and only "facts" are capable of being proven false, "it follows that only statements alleging facts can properly be the subject of a defamation action"" *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-53 (N.Y. 1993) (emphasis added).

Indeed, Defendant's statements arguing his statement about Plaintiff's credentials are "true," "substantially true," and "literally true" definitively establish his intention for these claims to be understood as statements of fact. Op. at 13. This is in contrast to opinions that **cannot** be proved true or false. As the New York Court of Appeals explains, an opinion can take one of two forms. It may be "a statement of opinion which is accompanied by a recitation of the facts upon which it is based," or it may be "[a]n opinion not accompanied by such a factual recitation" so long as "it does not imply that it is based upon undisclosed facts" *Davis v. Boeheim*, 24

14

N.Y.3d 262, 269 (N.Y. 2014). In this case, Defendant's insistence, when making his statements, that they should be understood as true both logically and legally precludes him from arguing that his statements should be understood as mere opinions.

Indeed, Defendant's posited proposition of a true/false dichotomy in opinions is a legal absurdity, rejected by New York courts because statements that are either true or false inherently constitute statements of fact. *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-53 (N.Y. 1993), *see also Rand v. N.Y. Times*, 75 A.D.2d 417, 421-22 (N.Y. App. 1980) ("The distinction between a statement of fact and an expression of opinion is that the former can be true or false, while the latter can be neither.") Defendant's position that "literally true" statements of fact are non-actionable simply because they are based on disclosed facts is simply inconsistent with controlling New York law.

### 2. The Statement Connotes Facts Which Are Actionable Under New York Law.

This is not the only way Defendant's motion incorrectly portrays how New York differentiates between statements that connote fact or non-actionable opinion. Even if Bouzy's statements about Mr. Broughty's credentials were technically accurate, that did not mean he was justified in claiming that Plaintiff was acting contrary to New York law. In such a situation, the New York Court of Appeals applies a three factor test: "(1) whether the specific language in issue has a precise

meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact" *Davis v. Boeheim*, 24 N.Y.3d at 270. We address each as follows.

**A. The First and Second Factors Weigh Heavily In Plaintiff's Favor.**

The first and second *Davis* factors weigh heavily in favor of finding that the Defendant's statements were factual assertions, particularly as Defendant himself argues they should be understood as statements of fact. Regarding the first factor, Defendant used specific and easily understood language to communicate that Mr. Broughty was not a licensed attorney. The second factor also supports treating Defendant's statements as facts because they are true, as agreed upon by the Court, Plaintiff, and Defendant. As the court notes, "Defendant's statement that there was "no history of him practicing" is still substantially true with regard to the social media persona he was apparently referencing." Op. at 13. Because Defendant's statements that Mr. Broughty was not a licensed attorney are capable of being proven true or false, the second factor also weighs heavily in favor of Mr. Broughty.

16

**B. The Third Factor Weighs Heavily in Plaintiff's Favor**

The third *Davis* factor—"whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal ... readers or listeners that what is being read or heard is likely to be opinion, not fact"—also heavily favors of Mr. Broughty. *See*, 24 N.Y.3d at 270.

When he made them, Defendant explicitly contended that his statements are factual. In his case, because of his widely credited expertise with specific respect to Twitter "misinformation" rendered his statements especially likely to be understood as **factual**—in this case, not despite being made on Twitter, but because they were made on Twitter, where Bouzy supposedly reigned supreme as a judge of truth and falsity.

For this reason, Defendant's claim that statements made on Twitter are automatically opinions is particularly—and certainly at the motion to dismiss stage—inapt as applied to him in particular under New York law. Thus, in *Zervos v. Trump*, 59 Misc. 3d 790 (N.Y. Tr. Ct. 2018), the defendant claimed, as Defendant does here, that statements made on Twitter during a back-and-forth debate should presumptively be deemed opinion. *Id.* In denying the motion to dismiss, the court rejected this argument, stating "[m]ost importantly, in their context, defendant's repeated statements—which were not made through op-ed pieces or letters to the

17

editor but rather were delivered in speeches, debates and through Twitter, a preferred means of communication often used by defendant—cannot be characterized simply as opinion, heated rhetoric or hyperbole*." Id.*, 59 Misc. 3d at 790; *see also Crime Victims Ctr., Inc. v. Logue*, 119 N.Y.S.3d 550, 551 (N.Y. App. 2020) (statements on Twitter were actionable); *Known v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6, 12 (N.Y. App. 2015) (statement on twitter provides valid basis for defamation by implication).

As in these New York decisions to the present case, Defendant's repeated statements were not conveyed through op-ed pieces or on letter-to-the-editor web pages. They were expressed in speeches, debates, and via Twitter, a communication medium Defendant frequently uses and for which he has been repeatedly recognized as having particular credibility due to his experience and expertise. This factual context cannot be overlooked at the stage of a pre-answer motion to dismiss, where such conclusions about the nature of statements cannot be made as a matter of law. See, *Id.*

New York law also requires statements be looked at in their full context not in isolation, noting that conversations providing such context could even span a series of days. *Id*. ("The context of other statements—some of which were made days after plaintiff's press conference, related to allegations raised at her press conference or mentioned plaintiff and her family—similarly raise jury questions as to whether they pertained to her.") Here Defendant's statement occurred over a

series of days and that full context should be taken into account. The First Amended Complaint adds this context, which plausibly pleads that a reasonable reader would see Defendant's Twitter statements as factual.

Again:  Defendant is not just any Twitter user; he is seen as a leading expert in identifying online misinformation, with his work cited by top academic institutions." FAC ¶¶ 2, 22-26. When Bouzy, a recognized authority, posts tweets about factual matters, it is reasonable for them to be interpreted as facts, akin to statements from the reputable media or academic institutions referencing his work. Hence, the three-factor test for determining the nature of statements tips in favor of the Plaintiff, suggesting that, in context, a reasonable person would view the statements as factual.

For these reasons, the Court should find as a matter of law that the statements made by the Defendant are factual statements. These statements connote facts and based on the three factor test to determine if the factual statements are actionable in New York case law the statements are indeed actionable. Defendant concedes their factual nature. Because Bouzy specifically made his expertise on Twitter and social media "misinformation" the lynchpin of his own social media—and traditional media—reputation and prominence, the Court should reject the "no one believes Twitter defense" he relies on as New York Courts have done in the past.

19

## II.   PLAINTIFF HAS PLED FACTS SUFFICIENT TO SHOW THE DEFENDANT KNOWINGLY OMITTED RELEVANT INFORMATION, SHOWING DEFENDANT MADE THE STATEMENTS WITH ACTUAL MALICE.

To allege actual malice in a legal claim, plaintiffs must present sufficient facts to plausibly suggest that further investigation could uncover evidence of the defendant's malicious intent." *See Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (internal quotation marks and citation omitted). Since malice concerns a defendant's internal mindset and often involves information they control, it is generally proven through circumstantial evidence rather than direct admission and rarely is admitted. *See Dalbec v. Gentleman's Companion, Inc.*, 828 F. 2d 921 (2nd Cir. 1987). Courts deduce actual malice from the available objective facts. *See Bose Corp. v. Consumers Union of United States, Inc.*, 692 F. 2d 189 (1st Cir. 1982).  New York law mandates that the entire context of the statements be taken into account, even if the contexts occurs over a series of days.4 In defamation cases, courts recognize that a plaintiff can demonstrate actual malice by proving any one of the following: (1) the defendant has admitted to harboring serious doubts about the truth of their statements, (2) the defendant admitted to knowing the statements were likely false, or (3) there is strong circumstantial evidence indicating that the defendant seriously doubted the truth or knew the statements were likely false. *See McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 359 (3d Cir. 2020).

**1. Bouzy Admitted to Knowing the Statements Were False and Actual Malice.**

Taken in full context Defendant's own words starting on September 17, 2022 and ending on September 18, 2022 ending with the statement— "I already had the information and was waiting for someone else to tweet it so I would not be accused of 'doxxing'" (emphasis added)—coupled with Defendant's intentional reference to a previous conversation, which occurred the day before, casting doubt on Mr. Broughty's credentials, demonstrates that Defendant knowingly made defamatory statements despite having information that confirmed Mr. Broughty's status as a licensed attorney. This timeline of events and admissions strongly indicates that Defendant acted with actual malice by intentionally promoting a false narrative about Mr. Broughty's professional legitimacy.

Defendant's tweets concerning Mr. Broughty's credentials occurred over a two-day period from September 17, 2022 to September 18, 2022.  On Twitter, a conversation in series of tweets, replies or comments focusing on a particular topic or ideas know as a "thread."   Defendant's Twitter thread about Mr. Broughty's credentials from September 17, 2022 provides the context in which these statements should be evaluated:

1. He (Bouzy) cannot locate Mr. Broughty's "bar association number."
2. "YouTube should verify professionals' licenses before allowing them to claim they are doctors or lawyers."

3. "Interesting there is no history of him practicing law anywhere. *Maybe the name he is using isn't his real name.*" (emphasis added)

4. A tweet notes that Mr. Broughty's YouTube channel does not list where Mr. Broughty is practicing law.

5. A tweet promotes the articles in which Bouzy was featured implying Broughty is misleading the public about being in the media.

6. A tweet accuses Mr. Broughty of deflecting his assertion that he was not a lawyer.

7. A tweet of a screenshot of a comment from a Twitter follower.

8. A tweet that states that he cannot find Mr. Broughty in the New York attorney search database, and that Mr. Broughty "might want to retain a lawyer."

   Other users challenged Bouzy: How could such a renowned expert on

research on Twitter not find Mr. Broughty's legal name when it was readily

available on Twitter?  Defendant responded to those critics and tweeted this on

September 18, 2022:

9. "Or you are just unable to **read between the lines**. *I already had the information* and was waiting for someone else to tweet it so I wouldn't be accused of 'doxxing.' **Reread the thread slowly**." (emphasis added).

   These statements are critical because they are a public admission by

Defendant that, at the time of making the defamatory statements, he was aware of

the facts that contradicted them. Defendant's subsequent conduct—specifically his

instruction to "reread the thread slowly"—is an explicit and direct acknowledgment

of his intent to communicate the opposite of what was true, demonstrating a

purposeful decision to engage in conduct amounting to actual malice. Defendant's

behavior went beyond mere negligence and entered the realm of willful blindness

22

and intentional manipulation of public perception, causing injury to Plaintiff's reputation as a licensed attorney.

The Court, in this context, should also heed the Defendant's invitation to "read between the lines" and recognize the intentional deceit embedded in Defendant's communications. Defendant insisted in his post that the context for defamation by implication is not contained in any one post, but rather the context is all of the posts that are part of the common thread conversation combined.  He specifically and directly declared that the entire thread—each post—should be understood for not its superficial words, but rather for the implications that appeared "between the lines." In other words, Defendant himself specifically and clearly claimed the entire thread—that is, the multiple sequential posts each made by him—were intended to be understood together, and the context for each of the related posts were relevant and material to the unified context. This is entirely consistent with that New York courts have found: that all related posts, even where occurring over multiple days, must be evaluated for the full relevant context regarding a given single post. See, *Zervos*, *supra*.

Here the thread Bouzy directed readers to is one from the previous day on September 17, 2022 where he falsely suggested that Mr. Broughty was not a real lawyer because Defendant could find the name "Nate Broady" in legal databases. Defendant shared the tweet from that thread (conversation) published the day before

which is tweet number three listed above, highlighting the last sentence and adding, "interesting there is no history of him practicing law anywhere. Maybe the name he is using isn't his real name." Defendant was more than implying to the public that Nate Broady, was an online alias, that he knew Mr. Broughty's legal name, and, reading "between the lines," as Bouzy urged his readers to do, that Mr. Broughty was a social media phony who was not a lawyer at all.

These facts amount to actual malice as defined by *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), which necessitates a defamatory statement made with knowledge of its falsity or with reckless disregard for whether it was false. Defendant's tweet (1) directly admitted knowledge of Mr. Broughty's legal name ("already had the information"), (2) criticized others for their inability to "read between the lines" and realize he already obtained the information the previous day, and (3) admitted a motive for his omission (that is, that Bouzy "was waiting for someone else to tweet it so I wouldn't be accused of 'doxxing'"). Defendant then explicitly invited readers to "Reread the thread slowly," an unequivocal reaffirmation of his subjective understanding of the meaning impartd by the related posts in his entire thread—then directly pointing readers back to the thread of September 17, 2022 when he suggested that Mr. Broughty was not a lawyer. Defendant's admission that he knew the truth of his statements conveyed a false inference is sufficient to survive a motion to dismiss. *See* Restatement (Second) of

Torts, § 580A cmt. d, *quoting St. Amant v. Thompson*, 390 U.S. 727, 731 (1968);

*McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 359 (3d Cir. 2020).

## 2. There Is Strong Circumstantial Evidence From Which It May Plausibly by Implied That Bouzy Knew His Statements Were False

Actual malice can be inferred from the facts when a plaintiff presents a compelling and plausible claim that discovery will reveal evidence of the defendant's knowledge of falsity or reckless disregard for the truth. *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 359 (3d Cir. 2020); *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015). Here, Defendant's public admissions form the cornerstone of this argument for actual malice.

Defendant's statements on Twitter, coupled with his professional standing as a leading authority on identifying false and misleading information on Twitter, carry an expectation of thorough research and truthfulness, particularly to his statement made on Twitter. His failure to disclose Mr. Broughty's legal name, despite prior knowledge, and his encouragement for others to scrutinize the conversation thread and understand the implications that were made, are critical in demonstrating a reckless disregard for the truth.

First, Defendant unequivocally (1) claimed to have known Plaintiff's real name from the beginning, which establishes his awareness of the truth contrary to the implications of his public statements. He (2) chided others for their inability to "read between the lines", thereby acknowledging his explicit desire that his

25

implications be understood by his audience, further evidencing his reckless disregard for whether his statements were false. Additionally, Defendant (3) admitted that his motive for not disclosing the information was to avoid potential accusations of 'doxxing,' which indicates a strategic and purposeful choice to mislead the public. Finally, he (4) invited a careful reexamination of the thread (conversation) from the previous day, thus confirming his prior knowledge and showcasing a deliberate attempt to maintain the defamatory narrative. FAC ¶ 34.

Next, as addressed above, Defendant's professional reputation amplifies the weight of his statements. When Defendant identifies information as false and misleading on Twitter, it garners significant attention due to his status as a prominent expert in the field of identifying false and misleading on Twitter. As he frequently crowed, his analyses regarding "misinformation" are regarded by both academic circles and traditional media as meticulously researched and authoritative. This public perception creates an expectation that Defendant would apply the highest degree of scrutiny before disseminating information on Twitter, given the trust placed in his expertise. The failure to disclose his prior knowledge of Mr. Broughty's legal name suggests a departure from this expected level of diligence and indicates an intent to harm by allowing the defamatory implications to stand uncorrected until his professional reputation was challenged the next day. As a result, a reasonable person would infer that Defendant would apply a high degree of scrutiny to any

information before disseminating it publicly to protect his reputation. *Zervos*, *id*. (Defendant in Davis "appeared well placed to have information about the charges" and the context of the statements suggested that he "spoke with authority and that his statements were based on facts").

It can hardly be suggested, on this record, that Defendant took immediate and clear action to rectify his falsehoods as questions were raised about their accuracy. Instead, he continued to imply that Mr. Broughty was not an attorney—a a reckless disregard for the truth. These statements were not isolated incidents but part of a broader pattern of communication that purposefully cast Mr. Broughty in a false light, as a deliberate effort to discredit Mr. Broughty despite actual knowledge held by Defendant that they his suggestions were baseless.

When the statements are taken in the full context of the conversations, Defendant's critical admission that he had Mr. Broughty's legal information during the time of making the defamatory statements is pivotal. Continuing from this point, the reasonable inference is that Defendant's actions were not merely negligent but exhibited a clear reckless disregard for the truth, which is essential in proving actual malice. By deliberately searching for an alias rather than the real name he had in his possession, Defendant purposefully ignored the truth in favor of perpetuating a defamatory implication. This disregard becomes even more egregious when considering Defendant's expertise in the field of information verification; his failure

27

to correctly represent Mr. Broughty's legal status is not a mistake a person of his professional background would make unless intentionally.

Given these facts, the Court should conclude that Plaintiff has made the prima facia case demonstrating that Defendant not only possessed actual knowledge contradicting the defamatory implications but also engaged in a pattern of behavior that was at best reckless and at worst, indicative of an intent to harm Mr. Broughty's reputation deliberately. This is not a case of nuanced or ambiguous language that could be open to multiple interpretations; the defendant's statements are straightforward and unambiguous in their defamatory insinuation, and his hope and desire that people read "between the lines" and "reread the thread slowly" unambiguously indicates he expects his audience to understand his insinuations and the defamatory implications which is the cornerstone of defamation by implication in New York.

### III.   THE COMPLAINT STATES A CLAIM FOR DEFAMATION AND/OR DEFAMATION BY IMPLICATION CLAIM UNDER NEW YORK LAW IN REGARD TO LITIGATION FUNDRAISING.

New York courts have recognized that specific accusations that allege a plaintiff has committed a crime—particularly serious ones like 'fraud,' 'extortion,' or 'blackmail'—can rise to the level of defamation per se. (Citation). This is especially true when such accusations include specific details that clarify the

28

defendant is accusing the plaintiff of actually committing a criminal act. *Zuckerbrot v. Lande*, 75 Misc. 3d 269 (N.Y. Tr. Ct. 2022).

The details provided in the First Amended Complaint demonstrate that Defendant's statements reflect specific allegations of criminal behavior, namely fraud. When a defendant articulates a clear narrative that outlines the alleged fraudulent acts of a Plaintiff, especially when associated with precise figures and purportedly undisclosed financial details, these statements are factual assertions that go directly to Plaintiff's professional reputation and fitness.

Terms such as "fraud," "extortion," or "blackmail" can sometimes be interpreted as non-defamatory opinions or insults because they often lack the factual basis that would classify them as statements of fact. That is not the case here: When such terms are accompanied by specific, detailed allegations that suggest a person has engaged in a concrete fraudulent scheme, as in Defendant's example of raising funds under allegedly false pretenses, they transition from potentially protected opinion to statements that can be objectively evaluated for truth or falsity.

As to Defendant's assertion that the twelve statements about the Plaintiff's fundraising efforts are non-actionable opinions, the three-factor test set forth by New York's highest court in *Davis v. Boeheim* provides a clear framework for distinguishing between fact and opinion, which is crucial in determining the actionability of the Defendant's statements. Defendant's reliance on case law from

29

the D.C. Circuit, the Fourth Circuit and the Ninth Circuit is misplaced because this Court has ruled that this case is governed by New York law and the New York courts have consistently applied the three-factor test to discern whether a statement is defamatory.

This Court should adhere to the well-established legal standards of New York rather than the precedents set by foreign jurisdictions cited by Defendant. Applying New York's three-factor test to the statements at issue, it is clear that the Defendant's assertions are not shielded as mere opinion. Instead, they are precise, verifiable, and presented in a context that lends them the weight of factual claims.

First, when determining whether a reasonable reader would consider the statement connotes fact or non-actionable opinion, New York law requires that the Court engage in a three-part analysis. The test is well-settled and requires that courts consider: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact. *Davis*, 22 N.E.3d at 1005 (internal quotation marks omitted and alterations adopted). We address each of these factors below.

### A. Factor 1 | Whether the Specific Language in Issue Has a Precise Meaning Which Is Readily Understood.

Defendant's claims against Mr. Broughty include specific allegations of fraudulent use of fundraising funds, conveying a precise meaning with respect to a concrete factukal claim clearly understood by the average reader. Defendant's nine statements in his Twitter thread must be taken as a whole and not individually. When evaluated in context of the entire conversation, Defendant's statements are readily understood to be claiming and implying the plaintiff committed a crime as a fact. Here is a small sample of the defendant's statements:

- "You raised nearly $80,000 and shared screenshots of wire transfers. But suddenly, sharing invoices and telling your donors about your previous unpaid legal bills is a problem? Nathaniel, you are a fraud. Release the invoices/balance info and tell your donors the truth."

- "All grifters use the same playbook, and Nathaniel isn't any different. Nate didn't release the invoices showing how much he was billed, nor did he disclose how much money is remaining. Instead, he insults me and then asks for more money. This is starting to smell like fraud…"

- "If it is discovered the person who raised the $45,000 raised the money under false pretenses, should he be reported to the NY Bar and authorities?" FAC ¶ 81.

These statements carry a definitive meaning of financial dishonesty and criminal fraud, which are readily understood as factual allegations of criminal misconduct and libel to his professional reputation. The first factor favors the Plaintiff.

**B.  Factor 2 | Whether the Statements Are Capable of Being Proven True or False**

The Defendant's claims are objectively capable of being proven true or false. The Plaintiff has demonstrated, through the provision of wire transfer receipts and detailed explanations on the GoFundMe FAC ¶ 70-73, 78, that all funds were used appropriately and in accordance with the stated purpose of the fundraising efforts. These are verifiable facts, not mere subjective opinions, which the Defendant chose to ignore or twist to fit a narrative of fraud. Defendant's own statements conceded that the statements could be proven true or false when he suggests Mr. Broughty release privileged information to show his claims are false. FAC ¶ 81. The second factor weighs in favor of the Plaintiff.

**C.  Factor 3 | Whether the Context of The Communication Are Such as To Signal Readers or Listeners That What Is Being Read or Heard Is Likely to Be Opinion, Not Fact**

The full context of the Defendant's statements, made in a detailed Twitter thread spanning more than a dozen tweets, does not lend itself to an interpretation as mere opinion when viewed in its full context.  Defendant, recognized as a leading authority on the detection of misinformation, used his platform to assert factual inaccuracies regarding the Plaintiff's fundraising, which was interpreted as credible information by his followers. Importantly, in their context, defendant's repeated statements—which were not made through op-ed pieces or letters to the editor but rather were delivered in speeches, debates and through Twitter, a preferred means

32

of communication often used by defendant—cannot be characterized simply as opinion, heated rhetoric or hyperbole. The Defendant's reputation as a trusted source on Twitter lends an air of legitimacy to his statements, thereby stripping them of any notion that they were mere opinion and not assertions of fact.

Defendant's attempt to frame certain statements as questions does not automatically render them opinions, contrary to what the Defendant's motion to dismiss implies. Under New York law, a Court is required to consider the full conversation and its context, rather than examining each statement separately. Defendant's assertion that the court should isolate the statements is an incorrect approach, as it overlooks the necessity of viewing the conversation as a whole to determine if it constitutes opinion. New York Court of Appeals repeatedly and universally rejected Defendant's view that the statements should be viewed in isolation stating "rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis "whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (N.Y. 1995) (internal citations omitted). Defendant bases his argument strongly on the *Chapin v. Knight-Ridder, Inc*. case, which was argued under Virginia Common Law and decided two decades prior to the Davis case. *Chapin v. Knight-Ridder, Inc.*,

33

993 F.2d 1087 (4th Cir. 1993).  Defendant argues that, legally, all questions should be considered opinions regardless of the context. This interpretation suggests that the mere phrasing of a statement as a question exempts it from being scrutinized as a factual assertion. The court in Chapin disagrees with that assertion stating, "A question can conceivably be defamatory, though it must be reasonably read as an assertion of a false fact;" *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993). Taken in the full context of the communications in the Defendant's Twitter thread are both asserting and implying facts.

The Defendant tries to insert his own test in place of the established three factor test in Davis under New York law, briefly arguing that the factual assertions are Defendant's opinion because the tweets "disclose[] the facts on which [they are] based" and do "not imply the existence of undisclosed facts." Def's MTD at 24. As stated earlier this is an incorrect view of New York law.

Regardless, Defendant's statements are actionable under the law because they imply undisclosed or false facts. *Davis v. Boeheim*, 24 N.Y.3d 262, 267 (N.Y. 2014). Defendant's tweets imply that Mr. Broughty engaged in defamatory conduct by misrepresenting the use of fundraised money, suggesting he dishonestly allocated the funds raise in violation of what he claimed to donors on GoFundMe. Additionally, the tweets insinuate that Mr. Broughty deliberately concealed critical financial details from his donors, such as failing to release law firm invoices or

34

disclosing the remaining balance of the funds. The Defendant further states that Mr. Broughty's fundraising might constitute illegal activity, worthy of reporting to legal authorities, and accuses him of deceitful solicitation for more funds under false pretenses. These implications, absent of explicit factual statements, nevertheless construct a damaging narrative of fraud and deceit against Mr. Broughty.

Based on the three-factor test from *Davis v. Boeheim*, Plaintiff has established that Defendant's statements regarding Plaintiff's fundraising efforts were factual assertions rather than protected opinions. The Defendant's language was precise, the statements were capable of being proven true or false, and the context did not indicate they were opinions. The Defendant's attempts to label these assertions as mere opinions fall flat in light of the specificity of the allegations, the evidence to the contrary, and the Defendant's authoritative position on the platform. Thus, the Defendant's motion to dismiss should be denied, and Plaintiff should be allowed to proceed with his defamation and defamation by implication claims.

### D. Rigorous Showing

In this matter, Mr. Broughty has made a rigorous showing that the language used by Defendant in his communications—specifically, a tweet threads—can be reasonably interpreted in two critical aspects as required by legal standards for defamation by implication. Firstly, the content and context of these tweets can be reasonably read to impart a defamatory inference. The tweets consistently suggest

fraudulent conduct on Mr. Broughty's part, despite the availability of clear, contradictory evidence, including detailed financial documentation and explicit terms of the GoFundMe campaign, all demonstrating Mr. Broughty's legitimate use of the raised funds.

Secondly, and crucially, the language and persistent nature of these communications affirmatively suggest that the Defendant not only intended but also endorsed the defamatory inference. This suggestion is reinforced by the Defendant's decision to ignore the exculpatory evidence that he himself had access to and, in some instances, even shared publicly. His continued propagation of a fraudulent narrative, despite knowing the truth, indicates a deliberate intention to defame. Additionally, the Defendant's recognized expertise in identifying and exposing false information, especially on Twitter, lends greater weight to his statements, suggesting an even stronger endorsement of the defamatory inferences he conveyed.

It is strikingly implausible that the defendant contends that the tweets cited in the amended complaint, such as "You raised nearly $80,000 and shared screenshots of wire transfers. But suddenly, sharing invoices and telling your donors about your previous unpaid legal bills is a problem? Nathaniel, you are a fraud," do not constitute an endorsement of a defamatory inference. The explicit nature of these tweets, particularly the direct labeling of Mr. Broughty as a fraud, goes beyond mere suggestion or implication. This is especially true when the plaintiff expects his

statements to be read "between the lines", expecting his audience to look for implications in what he says. Such a statement, especially when publicly made by the defendant, inherently carries with it a strong endorsement of the defamatory inference it conveys.

The argument that these tweets are anything but a clear affirmation of defamatory content is difficult to reconcile with the evident context and language used. The defendant's choice of words and the accusatory tone in which they are delivered strongly indicate an intent to convey to the public that Mr. Broughty engaged in deceitful and fraudulent conduct.

Thus, it is our position that the defendant's argument lacks credence, as the language of the tweets in question not only imparts a defamatory inference but clearly and affirmatively suggests that the defendant intended and endorsed that inference. The explicitness of the accusation leaves little room for any other reasonable interpretation and certainly provides more than adequate plausibility for purposes of a motion to dismiss. We respectfully urge the Court to recognize the overtly defamatory nature of these statements and Defendant's apparent endorsement of the harmful implications they carry.

## CONCLUSION

For all these reasons, plaintiff Nathaniel Broughty respectfully requests that

the Court deny in its entirety Defendant Christopher Bouzy's motion to dismiss the

First Amended Complaint for failure to state a claim.

DHILLON LAW GROUP INC.
A California Professional Corporation

By: _____
    Ronald D. Coleman

Josiah Contarino
50 Park Place, Suite 1105
Newark, NJ 07102
973=298-1723
rcoleman@dhillonlaw.com
jcontarino@dhillonlaw.com
*Attorneys for Plaintiff*
*Nathaniel J. Broughty*

Dated: December 26, 2023